IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TAYLOR HAZLEWOOD, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Case No. 3:23-cv-01109 |
| v. | § | |
| | § | |
| NETFLIX, INC., | § | |
| | § | |
| *Defendant.* | § | |

**DEFENDANT NETFLIX, INC.'S RULE 12(b)(6) MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND ................................................................................ 2

STANDARD OF REVIEW .................................................................................. 5

ARGUMENT ....................................................................................................... 6

I.      Hazlewood's Defamation Claim Is Implausible Because the Film
        Lacks Any Statement of Fact About Hazlewood, Much Less One
        That Is Also Defamatory ........................................................................ 7

        A.      The Film Isn't Defamatory Per Se Because It Never
                Unambiguously Accuses Hazlewood of Any Crime ................................ 8

        B.      Hazlewood Has No Defamation Claim Because the Film's
                Scenes Are Not Directed at Him and Are Incapable of
                Defamatory Meaning ................................................................ 9

        C.      Because Hazlewood Lacks a Per Se Claim and Concedes
                that He Hasn't Suffered Any "Special Damages,"
                Hazlewood Has No Defamation Claim ................................... 13

II.     Count II Is Implausible Because Hazlewood Cannot Show that
        Netflix, a Mere Publisher of the Film, Intruded on Hazlewood's
        Seclusion or Privacy in a Highly Offensive Way ................................ 13

III.    Count III Fails Because Hazlewood Concedes, as a Non-Public
        Figure, that the Film Never Used His Image to Misappropriate
        Its Value and Because the Film Lacks a Commercial Purpose as
        a Matter of First Amendment Law .................................................... 16

CONCLUSION ................................................................................................ 19

## TABLE OF AUTHORITIES

*Aldridge v. Sec., Dep't of the Air Force,* No. Civ. 7:05CV00056–R, 2005 WL 2738327 (N.D. Tex. Oct. 24, 2005) ........................................................ 13

*Am. Broad. Companies, Inc. v. Gill,* 6 S.W.3d 19 (Tex. App.—San Antonio 1999, pet. denied) ....................................................................... 10–11

*Amin v. UPS, Inc.*, 66 F.4th 568 (5th Cir. 2023)........................................... 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................... 6

*Benavidez v. Anheuser Busch, Inc.*, 873 F.2d 102 (5th Cir. 1989) ............................ 17

*Blanche v. First Nationwide Mortg. Corp.*, 74 S.W.3d 444 (Tex. App.—Dallas 2002, no pet.)...................................................................................... 15

*Cain v. Hearst Corp.*, 878 S.W.2d 577 (Tex. 1994)......................................... 9

*Cantu v. Rocha*, 77 F.3d 795 (5th Cir. 1996)................................................ 9

*Cardiovascular Provider Resources v. Gottlich*, 2015 WL 4914725 (Tex. App.—Dallas Aug. 18, 2015, pet. denied)............................................... 16–17

*Carr v. Brasher*, 776 S.W.2d 567 (Tex. 1989)............................................. 7, 9

*Compare Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355 (Tex. 2023)...................................................................................... 8

*Clayton v. Richards*, 47 S.W.3d 149 (Tex. App.—Texarkana 2001, pet. denied).................................................................................... 14–15

*Cunningham v. Politi*, 2019 WL 2517085 (E.D. Tex. Apr. 30, 2019) ........................ 15

*Cunningham v. Prof'l Educ. Inst., Inc.*, No. 17-CV-00894, 2018 WL 6709515 (E.D. Tex. Nov. 5, 2018), *report and recommendation adopted*, No. 4:17-CV-894, 2018 WL 6701277 (E.D. Tex. Dec. 20, 2018)........................... 15–16

*Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614 (Tex. 2018).......................... 7

*Esch v. Universal Pictures Co., Inc.*, No. 6:09-CV-02258-JEO, 2010 WL 5600989 (N.D. Ala. Nov. 2, 2010)..................................................... 18

*Express One Intern., Inc. v. Steinbeck*, 53 S.W.3d 895 (Tex. App.—Dallas 2001, no pet.).................................................................................. 18

*Gonzales v. Kay*, 577 F.3d 600 (5th Cir. 2009) .......................................... 5–6

*Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409 (Tex. 2020).......................................................................7–8, 13

*KTRT Television, Inc. v. Robison*, 409 S.W.3d 682 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) ............................................................. 8

*Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex. 2023)..................................................................................... 9

*Matthews v. Wozencraft,* 15 F.3d 432 (5th Cir. 1994) ............................. 7, 17

*Meadows v. Hartford Life Ins. Co.,* 492 F.3d 634 (5th Cir.2007) .............................. 16

*Miranda v. Byles*, 390 S.W.3d 543 (Tex. App.—Houston [1st Dist.] 2012, pet. denied)........................................................................8–9

*Moore v. Big Picture Co.*, 828 F.2d 270 (5th Cir. 1987) .............................. 17

*Moore v. Walthrop*, 166 S.W.3d 380 (Tex. App.—Waco 2005, no pet.)..................... 8–9

*New Times, Inc. v. Isaacks*, 146 S.W.3d 144 (Tex. 2004)........................ 11–12

*Noviello v. Holloway Funding Grp.*, No. 3:22-cv-52-BN, 2023 WL 128395 (N.D. Tex. Jan. 9, 2023)................................................................14–15

*O'Rourke v. Warren*, ---S.W.3d ----, 2023 WL 3914278 (Tex. App—Austin June 9, 2023, no pet. h.) ................................................................ 12

*Parker v. Spotify USA, Inc.,* 569 F. Supp. 3d 519 (W.D. Tex. 2021) .................... 11–12

*Randolph v. Dimension Films*, 634 F. Supp. 2d 779 (S.D. Tex. 2009) (collecting cases), *summarily aff'd, 381* F. App'x 449 (5th Cir. 2010)............... 6, 9, 19

*Reliable Consultants, Inc. v. Earle*, 517 F.3d 738 (5th Cir. 2008)............................ 5

*Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598 (S.D. Tex. 2010)....................................................................................... 7

*Roberts v. CareFlite*, No. 02-12-00105-CV, 2012 WL 4662962 (Tex. App.—Fort Worth Oct. 4, 2012, no pet.)....................................................... 15

*Robles v. Ciarletta*, 797 F. App'x 821 (5th Cir. 2019) ................................... 6

*Ross v. Midwest Communications, Inc.,* 870 F.2d 271 (5th Cir. 1989) ................. 7, 14

*Seale v. Gramercy Pictures*, 949 F. Supp. 331 (E.D. Pa.1996) ..................... 18

*Smith v. Textile Rental Services Ass'n*, No. 3:20-CV-3178-B, 2021 WL 3565578 (N.D. Tex. Aug. 12, 2021) ....................................................... 10, 12

*Sumien v. CareFlite*, No. 02-12-00039-CV, 2012 WL 2579525 (Tex. App.—Fort Worth July 5, 2012, no pet.) ...................................................... 14

*Tipping v. Martin*, No. 3:15-CV-2951-BN, 2015 WL 5999666 (N.D. Tex. Oct. 14, 2015) ..................................................................................................... 14

*Trusty v. Walmart Inc.*, No. CV H-20-235, 2020 WL 2497733 (S.D. Tex. May 13, 2020)........................................................................................................ 14

*Tu Nguyen v. Duy Tu Hoang*, 318 F. Supp. 3d 983 (S.D. Tex. 2018)........................ 12

*Turner v. KTRK Television, Inc.*, 38 S.W.3d 103 (Tex. 2000).................................... 10

*Vaughn v. Drennon*, 202 S.W.3d 308 (Tex. App.—Tyler 2006, no pet.).................... 15

*Walters v. Blue Cross & Blue Shield of Tex., Inc.*, No. 3:21-CV-981-L, 2022 WL 902735 (N.D. Tex. Mar. 28, 2022) .................................................... 14

*Watson v. Talia Heights*, 566 S.W.3d 326 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ..................................................................................... 17

*Whitehurst v. Showtime Networks, Inc.*, No. CIV.A 1:08-CV-47, 2009 WL 3052663 (E.D. Tex. Sept. 22, 2009)................................................................... 18

*Zarnow v. Clinics of N. Tex.*, No. 2-06-418-CV, 2007 WL 2460360 (Tex. App.—Fort Worth Aug. 31, 2007, no pet.) ................................................... 16

## **Rules**

Rule 12(b)(6)............................................................................................ 5–6, 18

**INTRODUCTION**

The film *The Hatchet Wielding Hitchhiker*, which debuted recently on Netflix, shows the Icarus-like ascent and fall of Caleb "Kai" McGillvary: a free-spirited if unstable hitchhiker who became a worldwide internet sensation literally overnight in 2013 after wielding a hatchet to rescue a woman from her violent attacker.[1] In documenting this short but crucial period of Kai's life, the film twice displays a montage of social media posts (once at the beginning and again toward the end) juxtaposing a photograph of hatchet-holding Taylor Hazlewood with several other Kai-themed visuals—roughly eight total seconds of a 90-minute film. In context, each montage's purpose is plain: to show viewers Kai's viral and global internet fame. Neither scene uses Hazelwood's name nor reveals any details about him. Yet Hazelwood says that his appearance in the film entitles him to "monetary relief of over $1,000,000"[2] because, by publishing (not *making*) the film, Netflix defamed him, invaded his privacy, and misappropriated his likeness. Hazelwood is wrong.

Hazlewood has no defamation claim because, among other reasons, no objective reasonable viewer of the film—the only viewer that matters at this stage in the proceedings—would believe that *The Hatchet Wielding Hitchhiker* concerns Hazlewood or makes statements or implications of verifiable fact about *him*. Nor has Hazlewood shown that *Netflix* invaded his privacy by merely distributing the film or acted in the "highly offensive way" Texas law requires to state a claim. And having conceded that he is "a non-public figure" who appears in a film, Hazlewood concedes away his misappropriation-of-likeness claim: use of a non-public figure's image has no "value associated with it" (an essential element of the claim); and the film itself

---

[1] Netflix has filed a separate motion for leave to file a copy of the film under seal. *See* Docs. 12, and 12-1. Once the motion is granted, a copy of the film will be filed with the Court. Netflix cites to the film's relevant scenes by citing their approximate runtime as "Doc. 12-1 at h:mm:ss." Hazlewood, for example, first appears at Doc. 12-1 at 00:08:10. Because runtimes can vary with different systems, the actual point may be a few seconds before or after the cited place.

[2] Doc. 7 ¶ 6.

cannot satisfy the claim's commercial purpose requirement. The Court should therefore dismiss this action *with prejudice*, as granting Hazlewood leave to amend would be futile. The film won't change, so neither can Hazlewood's allegations.

## FACTUAL BACKGROUND

In early 2013 in Fresno, California, a drugged and delusional man (Jett Simmons McBride) crashed his car into innocent people and then tried to strangle a good Samaritan assisting the innocents McBride nearly crushed to death.[3] In that chaotic scene, a nomadic hitchhiker named "Kai" (known also by his given name, Caleb Lawrence McGillvary) emerged from McBride's car—where he'd been riding as a hitchhiker—and persuaded McBride to release the good Samaritan after landing three blows from a hatchet to McBride's head and body: two blows with the blunt side of the hatchet and one with the blade side. "Smash, smash, Sa-maaash!"[4]

A local news station captured Kai's account of his now controversial heroism in a charismatic and memorable interview, which the station then uploaded to YouTube under the headline-grabbing moniker "hatchet wielding hitchhiker."[5] Overnight, Kai's interview attracted half a million viewers, when 20 had previously been typical.[6] For Kai, that viral moment meant instant fame: late night talk-show appearances,[7] interviews, pitches for a reality series, free stuff, the support and "love" of thousands of sudden fans around the world, and *dozens* of new Kai-featured visual materials (videos, memes, GIFs, etc.) that also went viral, like the autotune version of Kai's interview.[8] Kai, however, quickly went from famous to infamous when, just

---

[3] Doc. 12-1 at 00:00:01 to 00:03:47.
[4] Doc. 12-1 at 00:04:17 to 00:04:26.
[5] The news broadcast may be viewed here: https://youtu.be/ckfBGdZoR_0 (last visited June 29, 2023).
[6] Doc. 12-1 at 00:07:14 to 00:07:40.
[7] *See Kai the Hitchhiker on Jimmy Kimmel Live*, https://youtu.be/Fj7hxITA9Zw (last visited June 29, 2023).
[8] *See smash, Smash, SMASH! – Songify This*, https://youtu.be/wDQTvuP1Dgs (last visited June 29, 2023).

a few months later, New Jersey arrested him for first-degree murder—a charge for which he was later convicted and sentenced to 57 years in prison.

In January 2023, Netflix began streaming the documentary *The Hatchet Wielding Hitchhiker*, which details Kai's rise to fame in California and his fall from grace in New Jersey. The film documents these events mostly through the interviews of individuals who witnessed them while also using media that spun off from those events.

This case has *nothing* to do with the events that made Kai famous or that resulted in his conviction. This case instead concerns a single photo of Hazelwood holding a hatchet and its fleeting use in montages of social media posts of Kai and others in Kai-themed poses (shown below): roughly six seconds at the beginning (the image on the left) and two toward the end (the image on the right).

 

Hazelwood posted the photo at issue on the social media platform Instagram (allegedly) with the caption "Hatchet by Gary Paulsen."[9] The photo was purportedly taken in San Diego, California and posted on June 12, 2019—shortly after Kai's conviction in New Jersey.[10]

---

[9] Doc. 7 ¶ 2.
[10] Doc. 7 ¶ 12. The date is included in the photo beneath "158 likes." *Id.*

Hazelwood's hatchet photo is shown first in the film's beginning, while Kai is on the rise,[11] and then again toward the end, after Kai's fall from grace.[12] As that latter use occurs, Hazelwood's hatchet photo is displayed amid others, while an unseen internet personality is heard asking "Is this a guardian angel or a stone-cold killer? Let us know in the comments," which is then followed by a tweet that reads, "You can never trust anyone."[13]

A few months after *The Hatchet Wielding Hitchhiker*'s debut on Netflix, Hazlewood sued Netflix in Texas seeking more than $1 million in damages. According to Hazlewood's complaint, which he later amended, the film's use of the hatchet photograph invaded his privacy and damaged his reputation giving rise to claims for defamation (Count I), invasion of privacy (Count II), and misappropriation of likeness or right of publicity (Count III).[14] Hazlewood admits, however, that Netflix did not create the film and merely promoted and published it.[15]

Hazlewood concedes he is not a public figure or a social media influencer,[16] and there are no well-pleaded facts in his complaint indicating that the film's creator selected Hazlewood's hatchet photo to help promote the film or capitalize on any unique skills or notoriety. In fact, the only skills Hazlewood identifies in his complaint are as a pediatric respiratory therapist[17]—skills that, while important, are irrelevant to the film and its subject matter.

The gravamen of Hazlewood's suit is the film's *second* use of the hatchet photo, which Hazlewood claims is used not merely to illustrate "the public's worship and mimicry of Mr. McGillvary,"[18] (as with the first use), but also to convey the idea that Hazlewood "is untrustworthy and somehow like the convicted murder[sic]—Mr.

---

[11] Doc. 12-1 at 00:08:04 to 00:08:11.
[12] Doc. 12-1 at 1:20:38 to 1:20:40
[13] Doc. 12-1 at 1:20:41 to
[14] Doc. 7 at 4–11.
[15] Doc. 7 ¶¶ 1, 13, 14, 24, 27, 35.
[16] Doc. 7 ¶ 10.
[17] Doc. 7 ¶ 11.
[18] Doc. 7 ¶ 36.

McGillvary."[19] Hazlewood claims that, as a result of these juxtapositions, people will believe he is "dangerous and untrustworthy,[20] Hazlewood alleges that he began receiving inquiries about whether he had any connection to the film shortly after the documentary debuted on Netflix.[21] Yet even among the (hearsay) statements and inquiries Hazlewood claims he received, not one of them even suggests anyone ever *believed* Hazlewood was connected to the murder Kai committed.[22]

Nor does Hazlewood even *assert*, much less pleads facts that show, the documentary accuses Hazlewood of *any* criminal conduct. The closest Hazlewood's complaint gets is an allegation that the film *infers* Hazlewood is linked to Kai and is thus dangerous.[23] What the film shows, however, is that Kai acted alone and years *before* Hazlewood's photo was even snapped (as Hazlewood admits[24]).[25]

The film's fleeting use of Hazlewood's hatchet photo is not defamation under any set of facts and cannot give rise to any plausible claim for relief. Netflix therefore moves to dismiss Hazlewood's complaint for failure to state a claim.[26]

## STANDARD OF REVIEW

Rule 12(b)(6) exists to excise facially implausible claims like Hazlewood's from the Court's docket. *See Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). Claims are facially plausible only when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (cleaned

---

[19] Doc. 7 ¶ 25.
[20] Doc. 7 ¶ 5.
[21] Doc. 7 ¶¶ 16–18.
[22] Doc. 7 ¶¶ 16–18.
[23] Doc. 7 ¶¶ 17, 25–26.
[24] *See* Doc. 7 ¶¶ 25–26.
[25] Doc. 12-1 at 00:58:50 to 01:25:14.
[26] Although Netflix indicated in its portion of the Joint Status Report (Doc. 10) that it "may file a motion to dismiss for lack of personal jurisdiction," Doc. 10 at 2, Netflix has elected not to file that motion or assert that defense in this case. The case won't have any more merit in any other location. Netflix may still move to transfer, however, (as also indicated in the Joint Status Report) depending on facts that have yet to develop, such as the identity and location of important trial witnesses. Netflix will file such a motion, if any, by the deadline for "all motions" established in the Scheduling Order. Doc. 11 at 2.

---

up). The complaint must therefore offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation," and must "permit the court to infer more than the mere possibility of misconduct[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Otherwise, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (cleaned up). In deciding a motion to dismiss, all well-pleaded facts are accepted as true, and are viewed in the light most favorable to the plaintiff. *Gonzales*, 577 F.3d at 603. But, because of their conclusory nature, neither a formulaic recitation of the elements nor legal conclusions receive a presumption of truth. *Iqbal*, 556 U.S. at 678.

Because Hazlewood's complaint refers to and incorporates the contents of both the film and his photograph, this court should consider not only the facts alleged within the complaint's four corners but also those materials the complaint incorporates. *See, e.g., Robles v. Ciarletta*, 797 F. App'x 821, 831–32 (5th Cir. 2019) (affirming order granting defendant's Rule 12(b)(6) motion against plaintiff's civil rights claims based on the content of the body-camera footage and a police report because the plaintiff's complaint referred to both and both were central to the plaintiff's claims); *see also Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 787 (S.D. Tex. 2009) (collecting cases), *summarily aff'd, 381* F. App'x 449 (5th Cir. 2010) (holding that the contents of plaintiff's book and defendant's film could be considered and compared under Rule 12(b)(6) without converting the motion to one for summary judgment because the contents of each were incorporated by and central to the plaintiff's complaint). These standards, the film's contents, and Hazlewood's own allegations render his claims implausible.

## ARGUMENT

The Court should dismiss this action because Hazlewood's three causes of action are so defective that granting him leave to amend would be futile. Hazlewood's defamation claim (Count I) fails for several reasons, including that no objectively

reasonable viewer of the film would conclude the film's statements—including those about "a stone-cold killer"—concern Hazlewood or that the film is defamatory. *See, e.g., Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 671 (S.D. Tex. 2010) ("Whether a plaintiff is referred to in a statement is a question of law for the court." (cleaned up)); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989) ("Whether words are capable of the defamatory meaning the plaintiff attributes to them is a question of law for the court."). And Hazlewood's own allegations make quick work of Counts 2 and 3: Hazlewood's allegations show that *Netflix* never intentionally intruded on his private affairs in a way that is highly offensive to a reasonable person (essential elements for Count 2), *e.g.*, *Ross v. Midwest Communications, Inc.,* 870 F.2d 271, 273 (5th Cir. 1989); and he cannot establish "commercial use" which is an essential element of Count 3, *e.g.*, *Matthews v. Wozencraft,* 15 F.3d 432, 437 (5th Cir. 1994). The Court should therefore dismiss this action and without leave to amend on futility grounds.

I.   **Hazlewood's Defamation Claim Is Implausible Because the Film Lacks Any Statement of Fact About Hazlewood, Much Less One That Is Also Defamatory.**

In Texas, defamation is either per quod or per se. *Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 625–26 (Tex. 2018). Per quod statements are those that are not actionable per se. *Id*. at 625. To qualify as defamatory per se, the alleged statements must fall within one of four categories: (1) imputation of a crime, (2) imputation of a loathsome disease, (3) injury to a person's office, business, profession, or calling, or (4) imputation of sexual misconduct. *Id*. at 638. The distinction between defamation theories matters because a per quod theory requires different proof than a per se case: the former is actionable "only on allegations and proof of special damages," while damages are presumed in the latter. *Innovative Block of S. Tex., Ltd.*

*v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 418 (Tex. 2020).[27] Although Hazelwood alleges both theories of defamation in his complaint,[28] the facts he pleads show that neither is plausible, including on (but not limited to) the issue of damages.

## A. The Film Isn't Defamatory Per Se Because It Never Unambiguously Accuses Hazlewood of Any Crime.

"Imputation of a crime" is the only possible defamation per se theory that Hazlewood's complaint raises.[29] But the film's scenes, including those Hazlewood cites in his complaint, preclude any plausible showing on that score.

A statement that requires resort to circumstances or extrinsic evidence for its defamatory meaning cannot qualify as defamatory per se. *See, e.g., Moore v. Walthrop*, 166 S.W.3d 380, 386 (Tex. App.—Waco 2005, no pet.) (collecting cases). Statements qualify for per se treatment only if their meaning is apparent on their face and without reference to extrinsic facts or "innuendo." *Id.* Even unadorned statements that the plaintiff is a "crook" or a "liar" are insufficiently specific to qualify as defamatory per se. *Id.*; *accord KTRT Television, Inc. v. Robison*, 409 S.W.3d 682, 692 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). The statement must instead make a clear and specific charge that the plaintiff violated some criminal law or committed some specific criminal act. *Compare Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 368 (Tex. 2023) (refusing to find statements were defamatory per se without evidence the defendant referred "to the Penal Code or to any Texas criminal law," claimed "that the plaintiffs have been arrested or prosecuted," or otherwise indicated "that the plaintiffs have been convicted of crimes based on specific conduct"), *with Miranda v. Byles*, 390 S.W.3d 543, 552 (Tex. App.—

---

[27] To be clear, "defamation per se and per quod are not separate causes of action"; "their difference lies in the proof necessary to establish an injury." *Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 418 (Tex. 2020).
[28] Doc. 7 ¶¶ 23–28.
[29] *See* Doc. 7 ¶¶ 13–15, 25.

Houston [1st Dist.] 2012, pet. denied) (holding that defendant's accusations that plaintiff molested a child qualified as defamatory per se).

Nothing in *The Hatchet Wielding Hitchhiker* can be reasonably labeled as accusing Hazlewood of *anything*, much less a specific crime. Indeed, Hazlewood fails even to assert that the film accuses him of a specific crime. To the contrary, even Hazlewood's allegations confirm that innuendo is the only way a viewer could reach the warped and implausible conclusion Hazlewood alleges in his complaint: that despite the clear subject and focus of the film (Kai, the hatchet wielding hitchhiker), Hazlewood's presence in two montages *suggests* he too is a criminal or worthy suspicion.[30] *Moore*, 166 S.W.3d at 386. And per se defamatory statements eschew innuendo. *Id*. Hazlewood's per se theory of defamation should therefore be dismissed with prejudice because the film itself makes any amendment futile. *See, e.g.*, *Randolph*, 634 F. Supp. 2d at 788.

## B. Hazlewood Has No Defamation Claim Because the Film's Scenes Are Not Directed at Him and Are Incapable of Defamatory Meaning.

Plausible defamation claims show through well-pleaded facts that the defendant made a false statement about the plaintiff that is defamatory. *E.g.*, *Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex. 2023). Not only does Hazlewood's complaint lack any such facts, the film he placed at issue refutes any such notion.[31]

---

[30] Doc. 7 ¶¶ 16–22.

[31] The theory that truly animates Hazlewood's complaint is one Texas refuses to recognize. The clear thrust of Hazlewood's complaint is that he is "beyond angry" about "Netflix's unauthorized use of Hazlewood's photograph" in the film and the associations Hazlewood fears it will create between him and the film's singular focus—Kai, the Hatchet Wielding Hitchhiker. Doc. 7 ¶¶ 20–22. In forums where that claim exists, those facts give rise to a claim for false light invasion of privacy, which punishes a defendant's publication of *the plaintiff's image* (not the publication of statements) when that publication creates a false impression of association or sponsorship with the defendant or some other "tarnishing" relationship (e.g., with Kai or the film). *E.g.*, *Cantu v. Rocha*, 77 F.3d 795, 809 (5th Cir. 1996). Texas does not recognize that claim, *Cain v. Hearst Corp.*, 878 S.W.2d 577, 578 (Tex. 1994) ("[W]e have never embraced nor recognized . . . the false light tort."), which is ostensibly why Hazlewood has resorted to the other theories in his complaint—theories that neither the well-pleaded facts nor the film support.

---

Whether a statement concerns the plaintiff or is defamatory is a question of law. *E.g.*, *Carr*, 776 S.W.2d at 569. In deciding whether a statement concerns a plaintiff, courts look to whether the well-pleaded facts show that those who knew and were acquainted with the plaintiff would understand the statement referred to them. *E.g.*, *Am. Broad. Companies, Inc. v. Gill*, 6 S.W.3d 19, 34 (Tex. App.—San Antonio 1999, pet. denied).[32] Whether a defendant's statements are defamatory hinges on whether the statements "assert an objectively verifiable fact, rather than an opinion[.]" *Smith v. Textile Rental Services Ass'n*, No. 3:20-CV-3178-B, 2021 WL 3565578, at *5 (N.D. Tex. Aug. 12, 2021) (cleaned up, collecting cases). Statements that cannot be verified or statements that don't convey a verifiable fact can *never* be defamatory. *Id.* Both inquiries—whether the statements concern the plaintiff or are defamatory—are objective ones that hinge on what an objectively reasonable viewer ("reader" when print materials are at issue) would conclude about the statements after every statement is placed in its proper context and in relationship to the publication as a whole (here the film). *Id.* at *6. These principles are fatal to Hazlewood's defamation claims for two independent reasons.

First, no objectively reasonable viewer would conclude that the fleeting use of Hazlewood's image in two photo montages in a 90-minute film about Kai has anything to say about *Hazlewood*. In 90 minutes, no one says a word about Hazlewood, whether directly or indirectly. *E.g.*, *Am. Broad. Companies*, 6 S.W.3d at 34 (holding that plaintiffs lacked a defamation claim against the defendants because none of the defendants' alleged statements referred to the plaintiffs directly and none of the defendants' statements, or their references to "they" or "you," could reasonably refer to plaintiffs indirectly when placed in context). That is true, even of the segment where Hazlewood, joined by "dougneedshisbedz," appears on screen for barely two seconds while internet personalities ponder Kai's—not Hazlewood's—nature: "Is this

---

[32] Abrogated on other grounds by *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103 (Tex. 2000).

a guardian angel or a stone-cold killer?"[33] As in *American Broadcasting Companies*, no objectively reasonable viewer who placed this scene and that question *about Kai* in its proper context would *ever* conclude that any part of that film concerned Hazlewood (or anyone else pictured beside him). *See also Parker v. Spotify USA, Inc.*, 569 F. Supp. 3d 519, 535 (W.D. Tex. 2021) (holding that no objectively reasonable listener of a podcast accused of publishing defamatory statements about the plaintiff would conclude that the podcast's statements, while critical of the FBI and others, concerned the plaintiff).

Although Hazlewood includes in his complaint the subjective perceptions of those who know him, these anecdotes are immaterial at best and harmful to his claims at worst.[34] Under Texas law, only the objectively reasonable viewer matters, *Smith*, 2021 WL 3565578, at *6, which means the pleaded observations of Hazlewood's friends (or their mothers) are no barrier to dismissal. *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 158 (Tex. 2004) ("Intelligent, well-read people act unreasonably from time to time, whereas the hypothetical reasonable reader, for purposes of defamation law, does not."). But even if the subjective understandings of those acquainted with Hazlewood matter, they don't help him. To the contrary, what these individuals apparently expressed is disbelief about Hazlewood's unexpected and random "appearance" in a film they were watching on Netflix—not his purported involvement in a crime that happened roughly six years before the Hazlewood photo was even taken or any other events depicted in the film (2013 v. 2019).[35] *E.g.*, *Am. Broad. Companies*, 6 S.W.3d at 34.

---

[33] Doc. 12-1 at 01:20:39 (cleaned up).
[34] Doc. 7 ¶¶ 15–28.
[35] Hazlewood also provides the gratuitous "public comments" many made about his plight in the wake of media coverage Hazlewood garnered from national and local media outlets. Doc. 7 ¶ 28. But these post-suit comments are even more irrelevant than the ones from his acquaintances. Besides being immaterial to the objectively-reasonable-viewer test, Hazlewood concedes that these comments came from random members of the public and *not* those who knew and were acquainted with him. *E.g.*, *Am. Broad. Companies*, 6 S.W.3d at 34.

Second, nothing in the film can be objectively described as "defamatory," much less defamatory toward Hazlewood. Courts have repeatedly held that moments far worse than even the one that offends Hazlewood most (the question about Kai's being an angel or a killer) cannot be defamatory, such as those that involve "imaginative expression" and "rhetorical hyperbole." *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 155, 161 (Tex. 2004) (finding *Dallas Observer* article titled "Stop the Madness" to be unactionable imaginative expression, hyperbole, or satire); *O'Rourke v. Warren*, --- S.W.3d ----, 2023 WL 3914278, at *10 (Tex. App—Austin June 9, 2023, no pet. h.) (finding statements of bribery and corruption made during political campaign were not defamatory per se because they were the typical type of rhetorical hyperbole used in that setting). Even speculation about who is a criminal and who is not is not defamatory. *See Parker,* 569 F. Supp. 3d at 535. Hazelwood's complaint (and the film) lacks even that.

Nor is there anything in the film that asserts an objectively verifiable fact as to Hazlewood, even by implication or "gist." *Smith*, 2021 WL 3565578, at *5. "A statement that is unverifiable is a nonactionable opinion, and even when a statement is verifiable, if the context makes clear that it is not meant to be a factual statement, it is a nonactionable opinion." *Parker*, 569 F. Supp. 3d at 535. The first montage merely places Hazlewood's image among several others to show how Kai's initial story went viral and spread worldwide—something Hazlewood says nothing about in his complaint, other than acknowledging the scene's existence.[36] The second montage with its question about *Kai's* duality (angel or killer) is an express request by the unseen internet personality for the expression of his viewer's *opinions*—about Kai. As such, that montage cannot be defamatory as to *Hazlewood*. *E.g.*, *Tu Nguyen v. Duy Tu Hoang*, 318 F. Supp. 3d 983, 1008–09 (S.D. Tex. 2018) (dismissing defamation claim based on rhetorical question in headline that suggested plaintiff's

---

[36] *See* Doc. 7 ¶¶ 14–15.

interests aligned with communist party, because "gist" not a verifiable fact). Hazlewood's defamation claims therefore fail as a matter of law.

### C. Because Hazlewood Lacks a Per Se Claim and Concedes that He Hasn't Suffered Any "Special Damages," Hazlewood Has No Defamation Claim.

Because Hazlewood cannot plead, let alone prove, defamation per se (*supra* Part I.A), he must plead fact showing he suffered "special damages" before he may recover *any* other damages (general or otherwise) under a per quod theory. *E.g.*, *Innovative Block of S. Tex.*, 603 S.W.3d at 418 ("Defamation per quod is actionable on allegations and proof of special damages."); *see also Walker v. Beaumont ISD*, 938 F.3d 724, 743 (5th Cir. 2019) ("Damages must be shown unless the statements are defamatory per se such that damages are presumed."). "Special damages" include categories of damage such as lost profits, lost income, etc. *E.g.*, *Innovative Block of S. Tex.*, 603 S.W.3d at 418 (collecting cases).

Hazlewood's complaint lacks not only facts *showing* special damages, it lacks even the phrase "special damages,"[37] and Hazlewood tacitly concedes he has suffered no such damages. Hazlewood limited his allegations to speculative fears about what *may* happen based on his inclusion in the film.[38] But speculative fears about what might happen are insufficient. *See Innovative Block of S. Tex.*, 603 S.W.3d at 418. Although Hazlewood raises reputational harm in several places,[39] such harm is *not* a form of "special damage" and therefore cannot salvage his claims. *Id*. at 423–24.

### II. Count II Is Implausible Because Hazlewood Cannot Show that Netflix, a Mere Publisher of the Film, Intruded on Hazlewood's Seclusion or Privacy in a Highly Offensive Way.

Count II is implausible because Hazlewood pleaded no facts showing that Netflix intentionally intruded on his solitude, seclusion, or private affairs in a highly

---

[37] *See* Doc. 7 at 8–9.
[38] Doc. 7 ¶ 20 ("He has a constant *fear* that he will be improperly judged and avoided"); *id*. ¶ 21 ("Hazlewood experiences a constant fear of *future* lost employment" (cleaned up, emphasis added)).
[39] *E.g.*, Doc 7 ¶ 19.

offensive way as perceived by a reasonable person. *E.g.*, *Aldridge v. Sec., Dep't of the Air Force,* No. Civ. 7:05CV00056–R, 2005 WL 2738327, at *3 (N.D. Tex. Oct. 24, 2005). "[A]n intrusion upon seclusion claim fails without [allegations showing] a physical intrusion or eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying." *Noviello v. Holloway Funding Grp.*, No. 3:22-cv-52-BN, 2023 WL 128395, at *7 (N.D. Tex. Jan. 9, 2023) (collecting cases); *accord Ross v. Midwest Communications, Inc.,* 870 F.2d 271, 273 (5th Cir. 1989). Hazlewood concedes, however, that no such intrusive acts occurred here (much less acts Netflix committed). The hatchet photo was *publicly* available, even if *used* without his permission (allegedly),[40] and therefore not the product of "an intrusion upon seclusion."[41] *See Ross,* 870 F.2d at 273.

Hazlewood also identifies nothing that *Netflix* did (versus someone else) to acquire the photo in violation of his rights of seclusion. To the contrary, in admitting that Netflix merely "published" the film,[42] Hazlewood concedes Netflix had no role in any purported "invasion." Texas law is clear: "[t]he core of this claim is the offense of prying into the private domain of another, not publication of the results of such prying." *Clayton v. Richards*, 47 S.W.3d 149, 153 (Tex. App.—Texarkana 2001, pet. denied); *see also Walters v. Blue Cross & Blue Shield of Tex., Inc.,* No. 3:21-CV-981-L, 2022 WL 902735, at *4 (N.D. Tex. Mar. 28, 2022) (disclosure of medical records to third party not actionable intrusion, and expressly declining to acknowledge "virtual intrusion" as basis for invasion of privacy claim); *Trusty v. Walmart Inc.*, No. CV H-20-235, 2020 WL 2497733, at *2 (S.D. Tex. May 13, 2020) ("Texas courts do not assign

---

[40] Doc. 7 ¶¶ 10–12. The social media post that Hazlewood included in the complaint, and its 158 likes and public comments from ostensibly random strangers, itself shows *public* not private access to the post and photo.

[41] Even if Hazlewood mistakenly believed his Instagram post was private, Hazlewood's misunderstanding of his Instagram settings is not evidence that Netflix intentionally intruded upon his seclusion. *Sumien v. CareFlite*, No. 02-12-00039-CV, 2012 WL 2579525, at *3 (Tex. App.—Fort Worth July 5, 2012, no pet.) (mistaken belief about Facebook settings would not convert employer access to postings into claim for intrusion upon seclusion).

[42] Doc. 7 ¶ 13.

liability under this theory in a public space."); *Tipping v. Martin*, No. 3:15-CV-2951-BN, 2015 WL 5999666, at *5 (N.D. Tex. Oct. 14, 2015) (berating and insulting someone in a public space not intrusion upon seclusion); *Roberts v. CareFlite*, No. 02-12-00105-CV, 2012 WL 4662962, at *5 (Tex. App.—Fort Worth Oct. 4, 2012, no pet.) (review of Facebook messages and comments on Facebook wall, which formed basis for termination of employment, not an intrusion upon seclusion); *Vaughn v. Drennon*, 202 S.W.3d 308, 320 (Tex. App.—Tyler 2006, no pet.) (no intrusion where neighbor used binoculars to view plaintiffs "when standing directly in front of a large window with the blinds open or while outside"); *Blanche v. First Nationwide Mortg. Corp.*, 74 S.W.3d 444, 455 (Tex. App.—Dallas 2002, no pet.) (bank's reporting to credit agencies that plaintiffs had not made mortgage payments based on its own records and public documents not intrusion upon seclusion).

Hazlewood likewise fails to plead any facts showing that the acquisition of his photo was "highly offensive." When, as here, there is no sign of physical entry or eavesdropping, the plaintiff must show that the invasion was particularly severe. *See, e.g., Cunningham v. Politi*, 2019 WL 2517085, at *7 (E.D. Tex. Apr. 30, 2019) (determining that filing a police report was not a physical entry, any form of wiretapping, or in any other way highly offensive it was not actionable). The facts Hazlewood alleges, however, do not even faintly resemble the type of conduct that qualifies as a "highly offensive" and actionable intrusion. *Cf. Amin v. UPS, Inc.*, 66 F.4th 568, 577 (5th Cir. 2023) (denying employee bathroom breaks, forcing him to engage in usually private activity of defecating in a public space, was actionable intrusion upon seclusion); *Clayton*, 47 S.W.3d at 155 (private investigator's installation of video camera in bedroom of client's husband could support claim for intrusion upon seclusion). All that Hazlewood has pleaded is what courts have long held is immaterial: mere allegations that the defendant intruded on the plaintiff's purported right to be left alone. *See Noviello*, 2023 WL 128395, at *7; *Cunningham v.*

*Prof'l Educ. Inst., Inc.*, No. 17-CV-00894, 2018 WL 6709515, at *6 (E.D. Tex. Nov. 5, 2018), *report and recommendation adopted*, No. 4:17-CV-894, 2018 WL 6701277 (E.D. Tex. Dec. 20, 2018).

Hazlewood's focus in his complaint on unwanted publicity resulting from use of the photograph in the film is misguided. A claim for intrusion upon seclusion requires that the *intrusion* be offensive, not the *publicity* that may follow. *E.g.*, *Zarnow v. Clinics of N. Tex.*, No. 2-06-418-CV, 2007 WL 2460360, at *10 (Tex. App.— Fort Worth Aug. 31, 2007, no pet.) (holding that the plaintiff lacked a claim for invasion of privacy after his employer searched his office resulting in his arrest for weapons charges because the plaintiff based his claim *not* on the offensiveness of the search but on "the ordeal that resulted from the exposure of what was discovered"). Count II therefore fails as a matter of law.

### III. Count III Fails Because Hazlewood Concedes, as a Non-Public Figure, that the Film Never Used His Image to Misappropriate Its Value and Because the Film Lacks a Commercial Purpose as a Matter of First Amendment Law.

Hazlewood conceded away Count III when he acknowledged that he is neither a public figure nor a social media influencer,[43] and nevertheless sued Netflix for engaging in expressive conduct—publishing a motion picture like *The Hatchet Wielding Hitchhiker*. Count III (misappropriation of likeness) requires well-pleaded facts that show "(i) that the defendant appropriated the plaintiff's name or likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose; (ii) that the plaintiff can be identified from the publication; and (iii) that there was some advantage or benefit to the defendant." *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 638 (5th Cir.2007). Hazlewood cannot satisfy even the first of these elements.

---

[43] Doc. 7 ¶10.

Texas applies "a very restrictive interpretation" of the tort of misappropriation of name or image. *Cardiovascular Provider Resources v. Gottlich*, 2015 WL 4914725 (Tex. App.—Dallas Aug. 18, 2015, pet. denied). "Tortious liability for appropriation of a name or likeness is intended to protect the value of an individual's notoriety or skill." *Matthews v. Wozencraft,* 15 F.3d 432, 437 (5th Cir. 1994); accord *Gottlich*, 2015 WL 4914725, at *3. "Something unique about the person's name must [therefore] exist or the tortfeasor must cash in on goodwill associated with the plaintiff's name." *Meadows*, 492 F.3d at 638 (cleaned up). "The defendant must have appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness." *Moore v. Big Picture Co.*, 828 F.2d 270, 275 (5th Cir. 1987). But Hazlewood concedes there is no value in his name or likeness to appropriate because he is neither "a public figure nor a social media influencer."[44] Public figures with more prominent names and actions pleaded more than Hazlewood but failed to state claims for relief. *E.g.*, *Benavidez v. Anheuser Busch, Inc.*, 873 F.2d 102, 104–05 (5th Cir. 1989) (holding that plaintiff lacked a claim for misappropriation of likeness after the defendant included the plaintiff in a celebratory film about Hispanic military heroes); *Watson v. Talia Heights*, 566 S.W.3d 326, 330–31 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (holding that even if the defendant gained economic benefit from using plaintiff's name, those facts, without more, were insufficient as a matter of law to establish a misappropriation of name claim because the alleged benefits did not result from the plaintiff's unique value).

Hazelwood's claim is further undermined by the fact that the "product" at issue here is an expressive film, not a commercial product, and Hazlewood's image is not used in any form of advertising.  As the court recognized in *Benavidez*, the tort of misappropriation of likeness requires well-pleaded facts showing the defendant "commercialized" the plaintiff's image. 873 F.2d at 104. Like the film in *Benavidez,*

---

[44] Doc. 7 ¶ 10.

however, *The Hatchet Wielding Hitchhiker* advertises no products but is instead an expressive work about a matter of public concern: the social media frenzy surrounding Kai, his subsequent fall from grace, and the larger implications of this modern phenomenon of "going viral" and becoming "internet famous." Nothing in the complaint even hints that Netflix—a subscription streaming service[45]—sought to increase sales by publishing the documentary, much less by using a private person's photo for a mere eight seconds in the content of the film itself. *Whitehurst v. Showtime Networks, Inc.*, No. CIV.A 1:08-CV-47, 2009 WL 3052663, at *7 (E.D. Tex. Sept. 22, 2009); *Express One Intern., Inc. v. Steinbeck*, 53 S.W.3d 895, 900 (Tex. App.—Dallas 2001, no pet.) ("Generally, an appropriation becomes actionable when the name is used 'to advertise the defendant's business or product, or for some similar commercial purpose.'") (quoting Restatement (Second) of Torts § 652C, cmt. b (1977)). And films like *The Hatchet Wielding Hitchhiker* are generally considered to lack the "commercial purpose" required to state a misappropriation-of-likeness claim; a film's inherently expressive nature "would be entitled to First Amendment protection and thus excepted from liability." *Whitehurst*, 2009 WL 3052663, at *7. The mere fact that tickets are sold or the film is advertised or promoted does not imbue films like *The Hatchet Wielding Hitchhiker* with an actionable "commercial purpose." *See Whitehurst*, 2009 WL 3052663, at *7 (holding that a film's expressive use of the name and likeness of James Byrd Jr. could not give rise to a claim for misappropriation of likeness because the film was an expressive work entitled to protection and thus lacked the "commercial purpose" necessary to support a claim for misappropriation)*; accord Esch v. Universal Pictures Co., Inc.*, No. 6:09-CV-02258-JEO, 2010 WL 5600989, at *5 (N.D. Ala. Nov. 2, 2010) (granting the defendant's Rule 12(b)(6) motion); *Seale v. Gramercy Pictures*, 949 F. Supp. 331 (E.D. Pa.1996) (rejecting a plaintiff's commercial misappropriation claim based on a motion picture dramatizing

---

[45] Doc. 7 ¶8.

a historical event and holding that motion pictures were distinguishable from pure commercial speech).

Although plaintiffs are typically given leave to amend their complaint before their claims and case are dismissed with prejudice, this is an atypical case. Leave to amend may and should be denied when it is futile. *E.g.*, *Randolph*, 634 F. Supp. 2d at 788. And for all the reasons shown above, granting Hazlewood leave to amend would be the definition of futile. The film will not change no matter how many times Hazlewood amends and shows that Hazlewood lacks any actionable claim against Netflix. The action should therefore be dismissed with prejudice and a final judgment entered in Netflix's favor.

## CONCLUSION

The film and Hazlewood's allegations deprive Hazlewood of any claim under Texas law. No objectively reasonable viewer of a documentary about the rise and fall of Kai, the Hatchet Wielding Hitchhiker, would conclude that any statement or scene in the film concerns Hazlewood, much less defames him with a statement of verifiable fact. While the film may have resulted in unwanted attention, that is not actionable under Texas law, and even if the film implied Hazlewood is linked to the film or its subject. Texas rejected the tort of "false light invasion of privacy" long ago (the real target of Hazlewood's complaint). And neither the film nor the facts Hazlewood pleads give rise to any other claim: Netflix's publication of a film that displays an image that Hazlewood publicly displayed cannot support an intrusion upon seclusion claim under Texas law (Count II), including because it isn't "highly offensive"; and none of the facts alleged here show anyone used Hazlewood's image for a commercial purpose (Count III). Indeed, the First Amendment precludes that latter conclusion given the documentary's expressive purpose and value. The Court should therefore dismiss this action with prejudice and enter judgment in Netflix's favor.

Date:_ June 29, 2023 _____                          Respectfully submitted,

                                                   _/s/Joshua J. Bennett_____
                                                   E. Leon Carter
                                                   Texas Bar No. 03914300
                                                   lcarter@carterarnett.com
                                                   Linda R. Stahl
                                                   Texas Bar No. 00798525
                                                   lstahl@carterarnett.com
                                                   Joshua J. Bennett
                                                   Texas Bar No. 24059444
                                                   jbennett@carterarnett.com
                                                   Monica Litle Goff
                                                   Texas Bar No. 24102101
                                                   mgoff@carterarnett.com
                                                   **CARTER ARNETT PLLC**
                                                   8150 N. Central Expy, Suite 500
                                                   Dallas, Texas 75206
                                                   Telephone: 214-550-8188
                                                   Facsimile: 214-550-8185

                                                   **COUNSEL FOR NETFLIX, INC.**