IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TAYLOR HAZLEWOOD, | § | |
| *Plaintiff*, | § | |
| | § | Case No. 3:23-cv-01109 |
| v. | § | |
| | § | |
| NETFLIX, INC., | § | |
| *Defendant*. | § | |

**<u>DEFENDANT NETFLIX, INC.'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

Hazlewood's response to Netflix's motion to dismiss only reaffirms why his claims are meritless. His response concedes, for example, that Netflix's publication of the film at issue (*The Hatchet Wielding Hitchhiker*) at most "imputes"[1] Hazlewood's association with the film's subject (Kai, the Hatchet Wielding Hitchhiker) and thus subjected him solely to "inuendo,"[2] which, under cases Netflix cited but Hazlewood ignores, destroys his claim for defamation *per se*. Hazlewood further concedes (tacitly) that his defamation claims all fail because his response anchors them to the irrelevant statements of irrelevant observers (his "friends, relatives, and friends of friends"),[3] and without ever engaging the only observer that matters—the objectively reasonable viewer—and the many cases Netflix cited showing why no such observer would find this film defamatory. Hazlewood concedes further that his invasion of privacy claim hinges on facts that aren't actionable under Texas law (the mere publishing of "his personal photograph in a way that opened his life to the public's speculation and inuendo"),[4] and that his misappropriation of likeness claim may survive only if the Court ignores Fifth Circuit precedent applying Texas law and

---

[1] Doc. 15 at 10.
[2] Doc. 15 at 13.
[3] Doc. 15 at 11.
[4] Doc. 15 at 13.

follows Mississippi law instead.[5] Hazlewood's arguments, like his claims, are implausible and untenable and should be rejected.

I. **Hazlewood Mustered No Facts in His Complaint and No Cases in His Response to Show that the Film Is Defamatory Per Se.**

By conceding in his response that Netflix's publication of *The Hatchet Wielding Hitchhiker* "opened his personal life to the public's speculation *and inuendo*,"[6] Hazlewood conceded away any defamation claim under a per se theory. As Netflix showed in its motion, statements that rely on "innuendo" can never give rise to defamation per se. *Moore v. Walthrop*, 166 S.W.3d 380, 386 (Tex. App.—Waco 2005, no pet.) (collecting cases); *accord KTRT Television, Inc. v. Robison*, 409 S.W.3d 682, 692 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). And, if that concession weren't enough to justify dismissal, Hazlewood's failure to cite *any* authority suggesting that the facts he alleged, or the film he has attacked, are defamatory *per se* should be.

Hazlewood fails even to argue that his allegations will improve if given leave to amend. The Court should therefore dismiss Hazlewood's per se theory of defamation with prejudice because granting him leave to amend would be futile. *See, e.g.*, *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 787 (S.D. Tex. 2009) (collecting cases), *summarily aff'd*, 381 F. App'x 449 (5th Cir. 2010).

II. **Because Hazlewood Has Not Shown that the Objectively Reasonable Viewer Would Find the Film Defamatory, He Has No Defamation Claim.**

Hazlewood never disputes in his response that the plausibility of his defamation claim (whether per se or per quod) hinges on whether an objectively reasonable viewer would conclude the statements are defamatory after every statement is placed in its proper context and in relationship to the publication as a whole (here the film). *E.g.*, *Smith v. Textile Rental Services Ass'n*, No. 3:20-CV-3178-

---

[5] See Doc. 15 at 14–15 (citing *Johnston v. One Am. Producs., Inc.*, No. 07-CV-042, 2007 WL 2433927, at *7 (N.D. Miss. Aug. 22, 2007), which distinguishes Texas law from Mississippi law on its face).
[6] Doc. 15 at 13 (emphasis added).

B, 2021 WL 3565578, at *6 (N.D. Tex. Aug. 12, 2021) (collecting cases). Here, however, Hazlewood mentions nothing about such a viewer in his response but fixates instead on the hearsay observations of an irrelevant few ("friends, relatives, and friends of friends") and without citing a single case endorsing his approach or his allegations.[7] That won't do. *See id.*

Nor does Hazlewood make any effort to place the scenes he accuses as defamatory in their proper context. Quite the contrary. Hazlewood takes positions that no objectively reasonable viewer of the film would take—that the film makes "statements that [Hazlewood] is connected with a murder and/or are [sic] a murderer themself [sic]."[8] But no one in that film makes that assertion about Hazlewood. The first montage merely places Hazlewood's image among several others to show how Kai's story went viral.[9] And the second montage—which asks an audience for their opinion about whether *Kai* is an angel or a killer—seeks mere opinions while making no assertions of fact about Hazlewood.

If, as in *Tu Nguyen v. Duy Tu Hoang*, 318 F. Supp. 3d 983 (S.D. Tex. 2018), a rhetorical question that suggested the plaintiff was a communist sympathizer wasn't enough to state a claim (because "gist" is not a verifiable fact), *id.* at 1008–09, then Hazlewood's allegations too are legally insufficient. Hazlewood cites no cases holding otherwise. For this, and all other reasons cited in Netflix's motion, Hazlewood's claims should be dismissed with prejudice.[10]

---

[7] Doc. 15 at 11.
[8] Doc. 15 at 11.
[9] *See* Doc. 7 ¶¶ 14–15.
[10] That includes Hazlewood's failure to make a plausible showing of special damages. In his response, Hazlewood notes he sought special damages in his prayer for relief. But Netflix's argument was more substantive than that. What Netflix showed in its motion was that Hazlewood pleaded no facts *showing* he incurred special damages. And in asking for leave to amend on this issue, Hazlewood implicitly admits that Netflix was right. Doc. 15 at 12. But since Hazlewood cannot even show the objectively reasonable viewer would find the film defamatory, he shouldn't be given leave.

### III. By Conceding that the Gravamen of His Invasion-of-Privacy Claim Is Unwanted Publicity and Not Any Actual Invasion of His Privacy, Hazlewood Has Conceded He Has No Such Claim.

As Netflix made clear in its motion, a plausible invasion-of-privacy claim like Hazlewood's (one for intrusion upon seclusion) requires allegations showing that the *intrusion* was highly offensive and not merely the *publicity* that may follow. *E.g.*, *Zarnow v. Clinics of N. Tex.,* No. 2-06-418-CV, 2007 WL 2460360, at *10 (Tex. App.—Fort Worth Aug. 31, 2007, no pet.) (holding that the plaintiff lacked a claim for invasion of privacy after his employer searched his office resulting in his arrest for weapons charges because the plaintiff based his claim *not* on the offensiveness of the search but on "the ordeal that resulted from the exposure of what was discovered"). But rather than explain why his allegations make the requisite showing, Hazlewood admitted in his response that he merely "alleges that Netflix published his personal photograph to the public in a way that opened his personal life to the public's speculation and inuendo"[11]—exactly the kind of facts Texas holds are not actionable. And, again, as with every other argument in his response, Hazlewood cites no cases holding that facts like those he pleaded can support a claim for invasion of privacy. More than that, his complaint facially concedes no intrusion was needed to obtain the photo at issue—he posted it on his personal and public-facing Instagram page.[12] His claim should therefore be dismissed (with prejudice).

### IV. Because Hazlewood Tacitly Concedes Netflix Could Not Benefit from Use of His Name and Relies on Inapposite Mississippi Law to Salvage His Texas Claim, His Misappropriation of Likeness Claim Should Be Dismissed.

Netflix noted in its motion that Hazlewood cannot state a claim under Texas law having conceded that he is neither a public figure nor a social media influencer.[13] This is because, under *Texas* law, misappropriation-of-likeness claims require well-

---

[11] Doc. 15 at 13.
[12] Doc. 7 ¶12.
[13] Doc. 7 ¶10.

pleaded facts showing "(i) that the defendant appropriated the plaintiff's name or likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose; (ii) that the plaintiff can be identified from the publication; and (iii) that there was some advantage or benefit to the defendant." *Meadows v. Hartford Life Ins.,* 492 F.3d 634, 638 (5th Cir.2007). Hazlewood made no effort in his response, however, to explain why (or how) Netflix's publication of a film containing a mere photo of Hazlewood is evidence of Netflix's seeking to benefit from his admittedly unknown name. And the only case he cites on the issue—*Cardiovascular Provider Res. Inc. v. Gottlich*, No. 05-13-01763-CV, 2015 WL 4914725, (Tex. App.—Dallas Aug. 18, 2015, pet. denied)—proves Netflix right. *Id.* at *3 (vacating the plaintiff's jury verdict on his claim of misappropriation of likeness because introduced no evidence that the defendant's mere use of his "name on its investor list had anything to do with seeking or deriving a benefit from [the plaintiff's] reputation, prestige, notoriety or skill").

Rather than grapple with Texas law, Hazlewood turns to Mississippi law and *Johnston*, where the court there distinguished Texas law from Mississippi law, and not in Hazlewood's favor. 2007 WL 2433927, at *7–*8 (noting the differences between Fifth Circuit cases that apply Texas law on misappropriation-of-likeness claims and what Mississippi courts have held). Netflix, on the other hand, relied exclusively on cases that applied Texas law and show why Hazlewood has no claim. *E.g.*, *Matthews v. Wozencraft,* 15 F.3d 432, 437 (5th Cir. 1994); *Benavidez v. Anheuser Busch, Inc.*, 873 F.2d 102, 104–05 (5th Cir. 1989) (holding that plaintiff lacked a claim for misappropriation of likeness after the defendant included the plaintiff in a celebratory film about Hispanic military heroes); *Watson v. Talia Heights*, 566 S.W.3d 326, 330–31 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (holding that even if the defendant gained economic benefit from using plaintiff's name, those facts, without more, were insufficient as a matter of law to establish a misappropriation of name

claim because the alleged benefits did not result from the plaintiff's unique value). And Hazlewood musters nothing under *that* law to show his claims can survive Netflix's motion.

As the court recognized in *Benavidez*, Texas law requires well-pleaded facts showing the defendant "commercialized" the plaintiff's image. 873 F.2d at 104. And like the film in *Benavidez, The Hatchet Wielding Hitchhiker* advertises no products and is an expressive work about a matter of public concern: the social media frenzy surrounding Kai, his subsequent fall from grace, and the larger implications of this modern phenomenon of "going viral" and becoming "internet famous." That kind of use isn't actionable under Texas law. *E.g., Whitehurst v. Showtime Networks, Inc.*, No. CIV.A 1:08-CV-47, 2009 WL 3052663, at *7 (E.D. Tex. Sept. 22, 2009); *Express One Intern., Inc. v. Steinbeck*, 53 S.W.3d 895, 900 (Tex. App.—Dallas 2001, no pet.) ("Generally, an appropriation becomes actionable when the name is used 'to advertise the defendant's business or product, or for some similar commercial purpose.'") (quoting Restatement (Second) of Torts § 652C, cmt. b (1977)); *accord Esch v. Universal Pictures Co., No.* 6:09-CV-02258, 2010 WL 5600989, at *5 (N.D. Ala. Nov. 2, 2010) (granting the defendant's Rule 12(b)(6) motion); *Seale v. Gramercy Pictures*, 949 F. Supp. 331 (E.D. Pa.1996) (rejecting a plaintiff's commercial misappropriation claim based on a motion picture dramatizing a historical event and holding that motion pictures were distinguishable from pure commercial speech). Hazlewood therefore has no claim.

## CONCLUSION

Although plaintiffs are typically given leave to amend their complaint before their claims and case are dismissed with prejudice, this is an atypical case. Leave to amend here would be futile, and because it would be futile, it shouldn't be given. No objectively reasonable viewer of a documentary about the rise and fall of Kai, the Hatchet Wielding Hitchhiker, would conclude that any statement or scene in the film

concerns Hazlewood, much less defames him with a statement of verifiable fact. While the film may have resulted in a moment of unwanted attention, that is not actionable under Texas law, even if the film implied Hazlewood is linked to the film or its subject. Texas rejected the tort of "false light invasion of privacy" long ago (the real target of Hazlewood's complaint). And neither the film nor the facts Hazlewood pleads give rise to any other claim: Netflix's publication of a film that displays an image that Hazlewood publicly displayed cannot support an intrusion upon seclusion claim under Texas law (Count II), including because it isn't "highly offensive"; and none of the facts alleged here show anyone used Hazlewood's image for a commercial purpose (Count III). Indeed, the First Amendment precludes that latter conclusion given the documentary's expressive purpose and value. The Court should therefore dismiss this action with prejudice and enter judgment in Netflix's favor.

Date: August 4, 2023

Respectfully submitted,

*/s/ Joshua J. Bennett*
E. Leon Carter
Texas Bar No. 03914300
lcarter@carterarnett.com
Linda R. Stahl
Texas Bar No. 00798525
lstahl@carterarnett.com
Joshua J. Bennett
Texas Bar No. 24059444
jbennett@carterarnett.com
Monica Litle Goff
Texas Bar No. 24102101
mgoff@carterarnett.com
**CARTER ARNETT PLLC**
8150 N. Central Expy, Suite 500
Dallas, Texas 75206
Telephone: 214-550-8188
Facsimile: 214-550-8185

**COUNSEL FOR NETFLIX, INC.**