Caleb L. McGillvary, Pro se
#1222665/SBI#102317G NJSP
Po Box 861 Trenton, NJ 08625-0861

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TAYLOR HAZLEWOOD, | ) | |
|     PLAINTIFF | ) | |
|     And | ) | |
| CALEB L. MCGILLVARY | ) | CIVIL ACTION NO. |
| PKA "KAI THE HITCHHIKER" | ) | 3:23-CV-1109-N |
|     INTERVENOR | ) | |
| V. | ) | |
| | ) | |
| NETFLIX, INC. | ) | |
|     DEFENDANTS | ) | |

NOTICE OF MOTION TO INTERVENE (Fed. R. Civ. P. 24)

TO: CLERK, ALL CAPTIONED PARTIES
    Please take notice that, on a date and time to be determined by the Court, Intervenor-Plaintiff Caleb L. McGillvary ("Intervenor-Plaintiff") hereby moves the Court for an order adding him as an Intervenor-Plaintiff to this matter.

    As grounds for this motion, Intervenor-Plaintiff relies upon his attached declaration in support

    A proposed form of order is lodged herewith

Date: 2/9/24

                                     Caleb L. McGillvary, Pro Se
                                     #1222665/SBI#102317G NJSP
                                     PO Box 861 Trenton, NJ
                                     08625-0861

Caleb L. McGillvary, Pro se
#1222665/SBI#102317G NJSP
Po Box 861 Trenton, NJ 08625-0861

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TAYLOR HAZLEWOOD, | ) | |
| PLAINTIFF | ) | |
| And | ) | |
| CALEB L. MCGILLVARY | ) | CIVIL ACTION NO. |
| PKA "KAI THE HITCHHIKER" | ) | 3:23-CV-1109-N |
| INTERVENOR | ) | |
| V. | ) | |
| | ) | |
| NETFLIX, INC. | ) | |
| DEFENDANTS | ) | |

COMPLAINT IN INTERVENTION

### Preliminary Statement

1.) This is a diversity action for defamation and intentional infliction of emotional distress that arises from the same transactions as those described in Mcgillvary v. Netflix, Inc. et al, 2:23-cv-01195-JLS-SKx (U.S.D.C.-C.D.CA); which action was filed first in time and thus is required by principles of comity to be disposed of first; to prevent prejudice to the litigants therein from collateral estoppel and issue preclusion resulting from this case.

### Jurisdiction

2.) Original jurisdiction is conferred on this Court by 28 U.S.C. 1332, the parties are fully diverse and the amount in controversy is over $75,000. This action is believed to be brought in District Court in the district within which Defendant corporation is registered and conducts business. Jurisdiction over intervenor-plaintiff?s claims also exists under 28 U.S.C. 1367 because subject matter jurisdiction over plaintiff?s claims has already been established.

### Parties

3.)     Intervenor-plaintiff     Caleb     L.     McGillvary ("Intervenor-Plaintiff") is an individual. Intervenor-plaintiff is domiciled and resides at 3rd and Federal Sts. Trenton, NJ 08625-0861

4.) Plaintiff Taylor Hazlewood ("Plaintiff") is an individual believed to be a citizen of Kentucky, whose citizenship and

1

address are adopted by reference here from his initial complaint
pursuant to Rule 10(c)
5.) Defendant Netflix, Inc. ("Defendant" or "Netflix"), is a
Delaware Corporation with its principal place of business at
100 Winchester Circle Los Gatos, California 95032
                         Factual Allegations
6.) Intervenor-Plaintiff Caleb L. McGillvary
("Intervenor-Plaintiff") relies upon the Court Record of People
v McBride No. F13901235 in the California Superior Court of
Fresno County; and of People v McBride No. F068949 in the Court
of Appeal of California, 5th Appellate District; and incorporates
same by reference herein. Specifically, Intervenor-Plaintiff
makes reference to the following facts adduced at trial:
a.) Nelson Pereira ("Nelson"), Kenneth Simon ("Kenneth"), and
Nicholas Starkey ("Nicholas"); all eyewitnesses to the events
of February 1, 2013 at the intersection of Marks and McKinley
in Fresno, California ("The incident"); each testified under
oath that they could see into Jett Simmons McBride ("McBride")"s
car leading up to and including the incident. They each saw
that, immediately before McBride intentionally crashed his car
into a crowd of power line workers, McBride had both his hands
on the steering wheel; and that Intervenor-Plaintiff had his
hands in front of himself in his lap. Neither McBride nor
Intervenor-Plaintiff were communicating with each other, and
Intervenor-Plaintiff was completely in the passenger compartment
of the car, with no part of himself in the driver"s compartment.
b.) Kenneth, Nicholas, and two other eyewitnesses to the
incident; Ginger Miller-Barraza ("Ginger") and Tonya Baker
("Tonya"); each testified under oath that they observed McBride"s
conduct immediately after the collision but before
Intervenor-Plaintiff smashed him in the head with a hatchet.
They stated that McBride was continuing his assault on Rayshawn
Neely ("Rayshawn"): yelling that he was "sent to take [Rayshawn]
home; that "I am God. I am Jesus. I was sent here to take all
the niggers to heaven"; that "all niggers need to die"; "death
to all niggers"; and "I will kill you all."
c.) Nelson, Nicholas, Ginger, and Tonya each testified under
oath that, subsequent to McBride"s expression of deadly intent
in "6.)b.)"; McBride grabbed Tonya in a "bear hug" and was
escalating force against her rapidly. Intervenor-Plaintiff loudly
warned McBride 3 times to release Tonya. McBride yelled, "I"ll
kill you all"; then Intervenor-Plaintiff used his camping hatchet
with force 3 times on McBride"s head in defense of Tonya
d.) Fresno County Sheriff"s Officer Lyman testified under oath
that, when officers arrived on the scene, McBride yelled "I
did it! Get off of me! I"ll kill you all!"
e.) Laboratory analysis of the marijuana smoked by
Intervenor-Plaintiff and McBride prior to the incident revealed
that there was "no substance in the plant material other than
the active ingredient in marijuana."
f.) Blood was drawn from McBride at the hospital immediately
after the incident. Tests on the blood were negative for every
drug except for marijuana.
g.) McBride admitted to Jeff Stricker ("Stricker") that he "did

2

it"; and when Stricker asked McBride whether he hit the truck on purpose and tried to kill Rayshawn, McBride responded in the affirmative, and explained that he did so because Rayshawn was Illuminati, and expressed remorse

h.) McBride admitted during his sworn testimony that he told Stricker that he "hit the truck on purpose and tried to kill Rayshawn." He denied doing it because Rayshawn was black, but agreed he did it because Rayshawn was Illuminati. He confessed to having Illuminati delusions long before having met Intervenor-Plaintiff.

i.) Intervenor-Plaintiff was found by law enforcement at the scene to have used justified force in defense of others; was cleared of any wrongdoing in the incident; and was released without any charges or reprimands.

7.) On January 10, 2023, Defendant Netflix, Inc. ("Netflix") published a motion picture work called "The Hatchet Wielding Hitchhiker" ("THWH") on https://www.netflix.com, a website owned and operated by Netflix.

COUNT ONE: DEFAMATION

8.) In THWH described in "7", Netflix published provably false statements of fact about Intervenor-Plaintiff. To wit: Netflix republished the statement "Is he a guardian angel, or a stone cold killer"; which was reasonably understood by viewers thereof to imply that Intervenor-Plaintiff was culpable of being a "stone cold killer" during the events of February 1, 2013 described in "6" for which he was heralded as a "guardian angel." These statements were published through https://www.netflix.com to millions of third parties who accessed THWH online. Website, social media, and YouTube comments from viewers of THWH show that said statements were reasonably understood to imply the defamatory provably false statements of fact heretofore described. The implications Netflix published and republished of such defamatory statements were with knowledge of their falsity or a reckless disregard of the truth. These published and republished defamatory and false light statements wrongfully exposed Intervenor-Plaintiff to hatred, contempt, ridicule, or obloquy; thereby causing Intervenor-Plaintiff emotional distress and mental anguish by the egregious and outrageous conduct of false attributions of criminal conduct in the incident on February 1, 2013 and publicly shaming Intervenor-Plaintiff for something he didn"t do and accusing him of criminal acts he didn"t commit; and which defamation caused him to be shunned or avoided, or had a tendency to injure him in his occupation as a performing artist: and which resulted in damages proximately caused thereby from said defamation to Intervenor-Plaintiff"s copyrights value, value of unregistered marks in commerce, right of publicity, and in loss of business opportunities and payments for services: due to the false statement of fact alleging criminal conduct by Intervenor-Plaintiff in the incident in Fresno, CA on February 1, 2013; the truth of which in "6" is the basis upon which Intervenor-Plaintiff is widely known and sought after for partnership, endorsement and licensing fees, and payments for services, because everyone loves and wants to deal with a hero

3

who saved peoples" lives. Netflix knew the falsity of its
defamatory statements, or had a reckless disregard for the truth
thereof, at the time the statements were made.

9.) Intervenor-Plaintiff's reputation for saving people's lives
in the incident described in "6" was still strong at the time
of the publishing of THWH, with over 20,000 followers on his
Facebook page, over 6,000 subscribers on his YouTube channel,
and over 10,000 subscribers on his TikTok Account.
Intervenor-Plaintiff also has had numerous licensing offers
for his endorsement and for use of his copyrighted works in
the years since the February 1, 2013 incident, including:

    a.) In February of 2013, Intervenor-Plaintiff granted "The
Gregory Bros." a quality-controlled license to use his name,
voice, and likeness to market their auto-tuned song on YouTube
and iTunes; at which point the Intervenor-Plaintiff agreed to
visit and inspect the site of production. In April of 2013,
at the soonest practicable time pursuant to this agreement,
Intervenor-Plaintiff inspected the site of production in
Williamsburg, NY; and ascertained that the product was
manufactured with superb quality. Intervenor-Plaintiff routinely
inspects the product on YouTube and iTunes, only to discover
that its original excellent quality remains unchanged.
Intervenor-Plaintiff has received and continues to receive
licensing fees from the use of his marks; since the moment of
initial production to the present; and will continue to do so
for the foreseeable future. This has benefitted
Intervenor-Plaintiff approximately $14,000 so far. This remix
has continued to be sold at an amazing rate even over a decade
later, although THWH has diminished the sales because of its
slanderous statements which cut to the strength of
Intervenor-Plaintiff's marks, marketability of his persona,
and value of his copyrighted works.

    b.) In October of 2018, Intervenor-Plaintiff entered into
a quality-controlled license of his name, voice, and likeness
and marks with "Wavy Web Surf"; to market his YouTube channel.
In lieu of inspecting the site of production, due to
impossibility because of Intervenor-Plaintiff"s incarceration,
Intervenor-Plaintiff inspected the script of the video and
approved it for production. In consideration of this, Wavy Web
Surf paid Intervenor-Plaintiff the sum of $2,700 and included
advertisement of a link to Intervenor-Plaintiff"s token
crowdfunding platform; which raised approximately $11,300
therefrom to date. Intervenor-Plaintiff has not received any
offers for licensing of his marks, celebrity endorsement or
copyright protected works since THWH's publication, because
of its slanderous statements which cut to the strength of
Intervenor-Plaintiff's marks, marketability of his persona,
and value of his copyrighted works.

    c.) Intervenor-Plaintiff has licensed his endorsement to
the fundraisers "Go Fund Me" and "Go Get Funding" for two
separate fundraisers, one of which running from approximately
May of 2013-April of 2016, another which ran from approximately
August of 2016 - January of 2020; each of which has raised over
$10,000 based solely on the strength of Intervenor-Plaintiff's

persona and strength of his marks.

Intervenor-Plaintiff therefore pleads special damages in loss to his reputation, persona, and related property rights accruing to him under Cal. Civ. Code 3344 and common law; and to the strength of his marks "Smash, Smash, SUH-MASH!", "Kai the Hatchet-Wielding Hitchhiker", and celebrity endorsement accruing to him under 15 U.S.C. 1125; because of the slanderous statements, which diminished the value of the property rights created by those statutes; each of which rights are distinct and encapsulate rights to revenue from endorsements as shown by "a", "b" and "c" herein pleaded as being worth $14,000 each video, and over "$10,000" in print, even years after the incident described in "6". This damage to his property interest exists separate from any business interest therein, but in the overall value of the property right created by these statutes.

Additionally, Intervenor-Plaintiff pleads special damages in loss to the value of his property interests created by 17 U.S.C. 106, 201 in his copyright protected works, the value of which was diminished by the slanderous statements:

    d.) "Dark Knight of The Soul" Copyright Registration Number PA 2-399-437

    e.) "Unmentionable" Copyright Registration Number PA 2-399-439

    f.) "This was never a rape trial" Copyright Registration Number PA 2-398-911

    g.) "Kai's Magic Muscles" Copyright Registration Number PA 2-398-909

    h.) "Smash, Smash, SUH-MASH!" Copyright Registration Number PA 2-398-110

    i.) "Smash, Smash, SUH-MASH!" Copyright Registration Number PA 2-398-664

    j.) "Movement" Copyright Registration Number PA 2-396-377

    k.) "Movement" Copyright Registration Number SR 953-342

This damage to property interests exists separate from any business interests therein, but in the overall value of the property right created by these statutes.

Intervenor-Plaintiff avers that the total diminishment in value of his property rights created by these statutes proximately caused by Netflix' slander would amount to at least $75,000 in the lifetime aggregate value which the defamation caused a loss to.

10.) The above slanderous statement contained in THWH story is and was false, untrue, and defamatory, and THWH is slanderous on its face because:

    a,) THWH wrongfully accuses Intervenor-Plaintiff, and was intended to wrongfully accuse Intervenor-Plaintiff, of actions and statements that are false, defamatory, and damaging.

    b.) THWH clearly and wrongfully exposes Intervenor-Plaintiff to hatred, contempt, ridicule, and obloquy because it falsely accuses and depicts Intervenor-Plaintiff, among other things, as someone who behaved in a heinous and criminal manner during the February 1, 2013 incident, who "is a stone cold killer" for the acts described in "6"

11.) Netflix knew THWH as it applies to Intervenor-Plaintiff

to be false, and that THWH was intended by Netflix to convey false or defamatory statements about Intervenor-Plaintiff.

12.) Netflix wrote, filmed, published and broadcasted, or caused to be wrote, filmed, published and broadcasted, the slanderous statements concerning Intervenor-Plaintiff either with knowledge of the falsity of the statements or with reckless disregard for their truth.

13.) The statements appearing in THWH were so understood by those who read and heard the statements in THWH to have the defamatory meaning ascribed to it in this complaint, and Netflix intended THWH to be so understood and read by subscribers of Netflix and viewers of THWH.

14.) At the time THWH was publicly distributed throughout the United States and the World, Netflix were in possession of evidence that would raise serious doubt about the truth of the statements made in THWH. Nevertheless, Netflix without due regard for the truth, falsity, or malicious nature of the statements, formulated, published, and continues to disseminate THWH.

15.) At the time THWH was publicly distributed throughout the United States and the world, Netflix failed to sufficiently investigate the truth of their statements. Thus, Netflix, lacked any substantial reason to believe in the truth of the allegations contained in THWH.

16.) THWH was wrote, filmed, published and broadcasted with reckless disregard for the truth of the matter, and Netflix knew at the time the statements were formulated that they were false and injurious to Intervenor-Plaintiff. THWH was intended by Netflix, to directly injure the Intervenor-Plaintiff with respect to the Intervenor-Plaintiffs reputation, character, and business.

17.) Netflix, were also negligent in publishing THWH. With ordinary and reasonable care, Netflix would have realized, or could have discovered, that THWH was obviously false and grossly slanderous, offensive, and damaging to Intervenor-Plaintiff.

18.) As a legal result of THWH and the false statements, Intervenor-Plaintiff has suffered loss of reputation, shame, and mortification, all to his general damage in a sum to be proved at trial, but in a sum not less than $1,000,000.

19.) The defamatory statements contained in THWH were not privileged in any manner. The statements were intended by Netflix, to directly injure Intervenor-Plaintiff with respect to his reputation, character, and business.

20.) As a legal result of THWH, Intervenor-Plaintiff has suffered severe emotional distress, all to Netflix his general damage, in a sum not less than $1,000,000.

21.) As a legal result of the intentional and malicious conduct of Netflix Intervenor-Plaintiff has suffered damage to Netflix his property, business, trade, profession, and occupation, all to the Intervenor-Plaintiffs special damage in a sum to be determined at time of trial.

22.) By engaging in the misconduct alleged above, Netflix engaged in despicable conduct with the wilful and conscious disregard for the rights of Intervenor-Plaintiff. Netflix were aware of the probable dangerous consequences of their misconduct

and wilfully and deliberately failed to avoid those consequences, including subjecting Intervenor-Plaintiff to cruel and unjust hardship, in conscious disregard of Intervenor-Plaintiffs rights. Thus, an award of exemplary and punitive damages is justified.

COUNT TWO: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

23.) Intervenor-Plaintiff repleads "8"-"22" as stating, when liberally construed, a claim for intentional infliction of emotional distress, and incorporates them by reference.

24.) Netflix knew and was aware of Plaintiff's mental health condition of Post-Traumatic Stress Disorder ("PTSD") Prior to writing, filming, publishing, and broadcasting THWH.

25.) Netflix conduct in writing, filming, publishing, and broadcasting THWH was intentional and malicious and done for the purpose of causing Intervenor-Plaintiff to suffer humiliation and mental anguish and thereby triggering his PTSD. Netflix conduct in confirming and ratifying these acts was done with knowledge that Intervenor-Plaintiff would suffer emotional distress and was done with a wanton and reckless disregard of the consequences to the Intervenor-Plaintiff.

26.) THWH clearly exposed Intervenor-Plaintiff to hatred, contempt, ridicule, and obloquy, because it falsely depicted Intervenor-Plaintiff as someone who behaved in a heinous and criminal manner during the February 1, 2013 incident, as someone who intentionally laced a joint and thereby induced a psychotic break resulting in commission of assault and attempted murder; knowing the falsehood of such depiction at the time it was made.

27.) As a direct and proximate result of Netflix scandalous and outrageous acts, Intervenor-Plaintiff has suffered humiliation, mental anguish, and emotional distress, all to Intervenor-Plaintiffs damage in an amount not less that $1,000,000.

28.) Netflix acts in formulating, publishing, and disseminating THWH on https://www.netflix.com were done with the knowledge by Netflix that these acts would cause Intervenor-Plaintiff to suffer great humiliation, mental anguish, and injury. Netflix acts were, therefore, despicable conduct and so willful, wanton, intentionally and actually malicious and oppressive as to justify the award of exemplary and punitive damages.

Punitive Damages

29.) Intervenor-Plaintiff repleads "8"-"28" as showing that Netflix engaged in knowing and intentional tortious actuated by constitutional malice with slander and slander designed to trigger Intervenor-Plaintiff"s PTSD. Netflix's conduct against Intervenor-Plaintiff was for their own pecuniary gain at the expense of Intervenor-Plaintiff's reputation and property-interests. Intervenor-Plaintiff asks therefore for punitive damages against Netflix for the sake of example deterring others; and by way of punishing Netflix for their own malicious conduct in doing so. To this end, Intervenor-Plaintiff requests punitive damages in the amount of 5 times compensatory, general, and special damages to reflect the egregious and outrageous severity of falsely accusing someone of criminal conduct in a nationally syndicated publication, to which the public should be able to turn to for fact-checked

reporting.

PRAYER FOR RELIEF

WHEREFORE Intervenor-Plaintiff respectfully prays that this Court enter judgment:

30.) Granting Intervenor-Plaintiff a declaration that the acts of Netflix described herein are unlawful and tortious;

31.) A preliminary and permanent injunction ordering Netflix to retract THWH described in "7" from broadcast on all platforms within their custody or control; and to publish a correction and retraction of the slanderous statements with the truth of the matter as described above, on all platforms within their custody or control;

32.) Granting Intervenor-Plaintiff general damages, restitution and/or $1,000,000 in compensatory damages against Netflix for the emotional distress and mental anguish he suffered as a result of his PTSD being triggered by Netflix's slander; and special damages as described in "9"; for the defamation in "8"-"22";

33.) Granting Intervenor-Plaintiff general damages, restitution and/or $1,000,000 in compensatory damages against Netflix for the emotional distress and mental anguish he suffered as a result of his PTSD being triggered by Netflix slander; and special damages as described in "9"; for the intentional infliction of emotional distress in "23"-"28";

34.) Intervenor-Plaintiff also seeks punitive damages in the amount of five times compensatory, general, and special damages;

35.) Intervenor-Plaintiff also seeks nominal damages of $1

36.) Intervenor-Plaintiff also asks for any other relief this court deems just, proper, and equitable.

I declare under penalty of perjury pursuant to 28 U.S.C. 1746 that the foregoing statements are true and accurate to the best of my knowledge and belief.

Executed this _9_ Day of _FEBRUARY_ , 20 _24_

Respectfully Submitted,

Caleb L. McGillvary, Pro se
#1222665/SBI#102317G NJSP
Po Box 861 Trenton, NJ 08625-0861

8

Caleb L. McGillvary, Pro se
#1222665/SBI#102317G NJSP
Po Box 861 Trenton, NJ 08625-0861


UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TAYLOR HAZLEWOOD, | ) | |
|      PLAINTIFF | ) | |
|      And | ) | |
| CALEB L. MCGILLVARY | ) | CIVIL ACTION NO. |
| PKA "KAI THE HITCHHIKER" | ) | 3:23-CV-1109-N |
|      INTERVENOR | ) | |
| V. | ) | |
| | ) | |
| NETFLIX, INC. | ) | |
|      DEFENDANTS | ) | |

ORDER GRANTING INTERVENTION

The motion of Caleb L. McGillvary to intervene as a plaintiff in this action was submitted for decision on _____ [date]. The court has reviewed the papers submitted and considered the argument of counsel and the authorities cited. After due consideration, the court is convinced that the application to intervene is timely and that [Alternative One. Intervenors interest justifies

 intervention as of right]
Caleb L. McGillvary has an interest in the subject of this action and is so situated that the disposition of the action may impair or impede his ability to protect that interest. No party to this action adequately represents this interest of Caleb L. McGillvary.

1

[Alternative Two. Common questions of law or fact

 justify permissive intervention]

there are sufficient common questions of law or fact presented by the claims of the intervenor that permissive intervention would serve the interests of judicial economy, and the existing parties would not be unduly prejudiced by Caleb L. McGillvarys intervention in this matter.

Therefore, IT IS on this ___ Day of _____, 20___ ORDERED that:

1. The motion to intervene is GRANTED;

2. Caleb L. McGillvary is made a party plaintiff to this action;

3. The proposed complaint of Caleb L. McGillvary is deemed filed and served as of the date that this Order is signed;

4. The defendant[s] must respond to the complaint of Caleb L. McGillvary no later than _____ [date]. [Optional: Defendant[s] may respond by filing and serving a notice adopting the previously-filed pleadings in this matter.]

Dated: _____

                                   _____
                                   Hon. David C. Godbey, U.S.D.J.

2

Caleb L. McGillvary, Pro se
#1222665/SBI#102317G NJSP
Po Box 861 Trenton, NJ 08625-0861


UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TAYLOR HAZLEWOOD, | ) | |
|     PLAINTIFF | ) | |
|     And | ) | |
| CALEB L. MCGILLVARY | ) | CIVIL ACTION NO. |
| PKA "KAI THE HITCHHIKER" | ) | 3:23-CV-1109-N |
|     INTERVENOR | ) | |
| V. | ) | |
| | ) | |
| NETFLIX, INC. | ) | |
|     DEFENDANTS | ) | |

MOTION TO INTERVENE
(Fed. R. Civ. P. 24)

### Relief Sought

Caleb L. McGillvary ("Intervenor") moves this court for an order permitting him to intervene as a plaintiff in this action as a matter of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure or, in the alternative, allowing Intervenor permissive intervention as a plaintiff in this matter under Rule 24(b) of the Federal Rules of Civil Procedure.

### Claims to Be Asserted

By intervening in this action, Intervenor seeks to assert the claims set out in the attached Complaint in Intervention

### Grounds for Intervention

Intervention as of Right

Intervenor adopts by reference his declaration in support of this motion, and avers that it shows he is entitled to intervene in this action as a matter of right because:

1. This motion is timely, coming as soon as reasonably possible after the decision in this case was published to LEXIS and was

1

thereafter discovered through notice to Plaintiff at 2023 U.S. Dist LEXIS 183463 (N.D.TX October 11, 2023). See Sommers v Bank of America 835 F.3d 509, 512-13 (CA5 2016)(Motion to intervene must be timely).

2. Intervenor has a legally protectable interest in the subject matter of this action. This action concerns defamtion and intentional infliction of emotional distress claims against Netflix, Inc. for the publishing of a motion picture work entitled "The Hatchet Wielding Hitchhiker" ("THWH"). Intervenor has a direct, protectable interest in this action because he has filed a suit first in time concerning the same transactions involved in this suit, in the Central District of California at Docket Number 2:23-cv-01195-JLS-Sk; and disposition of the claims and determinations of factual issues involved in this suit could have preclusive effect on the first-in-time action. See Collegiate Licensing Co. V American Cas. Co. of Reading 713 F.3d 71, 78 (CA11 2013)(The first-filed rule provides that when parties have instituted competing or parallel litigation in seperate courts, the Court initially seized of the controversy should hear the case). Additionally, insofar as this case makes findings of fact of Plaintiff being a "criminal"; the proceeding from which the conviction relied upon resulted was consitutionally infirm, and the State Court decision was void and not entitled to full faith and credit. See Kremer v Chemical Construction Corp. 456 U.S. 461, 481 (1982)(Validity requires that rendering court proceeding provided due process of law under Fourteenth Amendment; no court may give effect to constitutionally infirm judgment). The conviction has been challenged in a pending 28 U.S.C. 2254 petition, which raises 14th Amendment violations, in the District of New Jersey at Docket Number 1:22-cv-04185-CPO. The habeas case has been pending since June 22, 2022, and is required by statute to be decided prior to disposition of any factual determinations regarding criminality of Intervenor in this case. See 28 U.S.C. 1657(a)(Mandating that habeas petitions be decided ahead of ordinary civil cases); See also Texas v United States 805 F.3d 653, 657 (CA5 2015)(Intervenor must have a legal interest in the matter).

3. Interveonr's interests in the actions will be substantially impaired or impeded if he is not allowed to intervene. In particular, any findings of reputational harm from association with Plaintiff could have a collateral estoppel effect on his ability to recover damages for the much sought-after use of his marks and persona in his right of publicity at issue as special damages in the Central District of California defamation case. Additionally, factual and legal determinations in this case may have issue or claim preclusive effect on the first-filed case, which cuts against an overriding interest in comity amongst the federal courts and impairs or impedes Intervenor's interest in having his issues and claims decided first under the first-filed rule. See Heaton v Monogram 297 F.3d 416, 422 (CA5 2002)(Intervenor must plausibly allege that disposition of the

mater in his interest would impede his legal interest embodied by the dispute).

4. The existing parties in this action do not adequately represent Intervenor's interest in the action because the defendant has a conflict of interest with Intervenor, and the Plaintiff has stated conclusions adverse to Plaintiff's interests in his complaint. Intervenor is informed and believes that Plaintiff is pursuing a line of argument that portrays Plaintiff in an adverse way to Plaintiff's interests in the Central District of California case, and the Defendant will be doing likewise. Ibid.

Permissive Intervention

In the alternative, if Intervenor's motion for intervention as of right is denied, Intervenor adopts by reference his declaration in support of this motion and avers that it shows that he should be allowed permissive intervention in this action because:

1. The claims that Intervenor desires to assert in this action if permitted to intervene, share common questions of fact and law. Specifically, this action concerns defamtion and intentional infliction of emotional distress claims arising from the same set of transactions, to wit: the publishing of THWH. The questions posed by the claims added by Intervenor are sufficiently common to justify intervention because they arise from the same transactions and ought in fairness to be considered together; and because the first-filed rule demands as a matter of comity that Intervenor's claims be decided first.

2. Judicial economy will be served by allowing intervention because all of the evidence on defamation and Defendant's failure to exercise due diligence or action with malice in publishing the false and defamatory statements is common to both the defenses asserted by the Plaintiff and the proposed Plaintiff-in-intervention. A separate action between the plaintiff and defendant, and the proposed plaintiff-in-intervention concerning the same claims resulting from the same transaction would be duplicative and wasteful. In contrast, adding this issue to the current suit would not substantially delay the trial or the plaintiffs ultimate judgment, because the factual issues are identical, and only the legal rights that flow from the facts are disputed.

Grounds for Granting of Motion

In addition to the grounds for intervention discussed above, Intervenor adopts by reference his declaration in support of this motion and avers that it shows that the court should grant this motion to intervene because:

1. The motion for intervention was timely made. The motion was

3

made as soon as LEXIS CD Client was updated at the NJ State Prison law library for the first subsequent time since this Court issued the decision published at 2023 U.S. Dist LEXIS 183463 (N.D. TX Oct. 11, 2023)

2. This court has subject matter jurisdiction over all of the claims proposed to be added by Intervenor because original jurisdiction is conferred on this Court by 28 U.S.C. 1332, since the parties are fully diverse and the amount in controversy is over $75,000. Jusrisdiction over Intervenor-Plaintiff's claims also exists under 28 U.S.C. 1367 because subject matter jurisdiction over Plaintiff's claims has already been established and Intervenor-Plaintiff's claims relate back to the initial complaint filed by Plaintiff.

3. Intervenor has attached his proposed Complaint In Intervention to this Motion, as required by Rule 24(c) of the Federal Rules of Civil Procedure.

### Record on Motion

This Motion is based on this document, the Notice of Motion, the Certificate of Service, the supporting Declaration of Caleb L. McGillvary, and the proposed Complaint In Intervention filed herewith, on all of the papers and records on file in this action, and on whatever evidence and argument may be allowed at the hearing on this motion.

Date: 2/9/24

Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ
08625-0861

Caleb L. McGillvary, Pro se
#1222665/SBI#102317G NJSP
Po Box 861 Trenton, NJ 08625-0861


UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TAYLOR HAZLEWOOD, | ) | |
| PLAINTIFF | ) | |
| And | ) | |
| CALEB L. MCGILLVARY | ) | CIVIL ACTION NO. |
| PKA "KAI THE HITCHHIKER" | ) | 3:23-CV-1109-N |
| INTERVENOR | ) | |
| V. | ) | |
| | ) | |
| NETFLIX, INC. | ) | |
| DEFENDANTS | ) | |

DECLARATION IN SUPPORT OF MOTION TO INTERVENE
(Fed. R. Civ. P. 24)

I, Caleb L. McGillvary ("Intervenor-Plaintiff" or "Intervenor"), hereby declare pursuant to 28 U.S.C. 1746 the following:

1.) I am the pro se intervenor-plaintiff in the above-captioned matter.

2.) I am currently incarcerated in a maximum security prison which has severely restricted access to research and law library facilities. I am only permitted 5 hours at the law library once every 6 days, during which time I may research caselaw, print documents, or make copies of legal documents. Sometimes guys in the messhall jump on each other's heads or stab each other and the whole place gets locked down, which means that law library gets cancelled. I have had a clean disciplinary record for years, so any such delay is through no fault of my own. Despite my good faith and diligent effort, these circumstances make it so that legal research and preparation of documents is a much slower process for me than for most people. I have to wait until the LEXIS CD Client gets updated to discover new cases, and the prison only updates it every quarter. The prison had already updated LEXIS shortly before this Court's October 11, 2023 decision; and so I was not aware of it, nor could I have reasonably discovered it through due diligence, until very recently.

3.) Intervenor is entitled to intervene in this action as

1

a matter of right because:

a.) This motion is timely, coming as soon as reasonably possible after the decision in this case was published to LEXIS and was thereafter discovered through notice to Plaintiff at 2023 U.S. Dist LEXIS 183463 (N.D.TX October 11, 2023).

b.) Intervenor has a legally protectable interest in the subject matter of this action. This action concerns defamtion and intentional infliction of emotional distress claims against Netflix, Inc. for the publishing of a motion picture work entitled "The Hatchet Wielding Hitchhiker" ("THWH"). Intervenor has a direct, protectable interest in this action because he has filed a suit first in time concerning the same transactions involved in this suit, in the Central District of California at Docket Number 2:23-cv-01195-JLS-Sk; and disposition of the claims and determinations of factual issues involved in this suit could have preclusive effect on the first-in-time action. Additionally, insofar as this case makes findings of fact of Plaintiff being a "criminal"; the proceeding from which the conviction relied upon resulted was consitutionally infirm, and the State Court decision was void and not entitled to full faith and credit. The conviction has been challenged in a pending 28 U.S.C. 2254 petition, which raises 14th Amendment violations, in the District of New Jersey at Docket Number 1:22-cv-04185-CPO. The habeas case has been pending since June 22, 2022, and is required by statute to be decided prior to disposition of any factual determinations regarding criminality of Intervenor in this case. See 28 U.S.C. 1657(a)(Mandating that habeas petitions be decided ahead of ordinary civil cases).

c.) Interveonr's interests in the actions will be substantially impaired or impeded if he is not allowed to intervene. In particular, any findings of reputational harm from association with Plaintiff could have a collateral estoppel effect on his ability to recover damages for the much sought-after use of his marks and persona in his right of publicity at issue as special damages in the Central District of California defamation case. Additionally, factual and legal determinations in this case may have issue or claim preclusive effect on the first-filed case, which cuts against an overriding interest in comity amongst the federal courts and impairs or impedes Intervenor's interest in having his issues and claims decided first under the first-filed rule.

d.) The existing parties in this action do not adequately represent Intervenor's interest in the action because the defendant has a conflict of interest with Intervenor, and the Plaintiff has stated conclusions adverse to Plaintiff's interests in his complaint. Intervenor is informed and believes that Plaintiff is pursuing a line of argument that portrays Plaintiff in an adverse way to Plaintiff's interests in the Central District of California case, and the Defendant will be doing likewise.

4.) Intervenor should be allowed permissive intervention in this action because:

a.) The claims that Intervenor desires to assert in

2

this action if permitted to intervene, share common questions of fact and law. Specifically, this action concerns defamtion and intentional infliction of emotional distress claims arising from the same set of transactions, to wit: the publishing of THWH. The questions posed by the claims added by Intervenor are sufficiently common to justify intervention because they arise from the same transactions and ought in fairness to be considered together; and because the first-filed rule demands as a matter of comity that Intervenor's claims be decided first.

      b.) Judicial economy will be served by allowing intervention because all of the evidence on defamation and Defendant's failure to exercise due diligence or action with malice in publishing the false and defamatory statements is common to both the defenses asserted by the Plaintiff and the proposed Plaintiff-in-intervention. A separate action between the plaintiff and defendant, and the proposed plaintiff-in-intervention concerning the same claims resulting from the same transaction would be duplicative and wasteful. In contrast, adding this issue to the current suit would not substantially delay the trial or the plaintiffs ultimate judgment, because the factual issues are identical, and only the legal rights that flow from the facts are disputed.

      5.) For all the foregoing reasons, and for all the reasons in my attached motion, I request in good faith that the Court should grant my motion to intervene, and file the complaint in intervention attached hereto as Exhibit A.

I declare under penalty of perjury that the foregoing statements are true and accurate.

Executed this 9 day of FEBRUARY, 20 24

Date: 2/9/24

                          _____

                          Caleb L. McGillvary, ProSe
                          #1222665/SBI#102317GNJSP
                 PO Box 861, Trenton, NJ08625

3

PROOF OF SERVICE

I, Caleb L. McGillvary, declare pursuant to 28 U.S.C. 1746 that on today's date, I placed in the institutional mailing system here where I'm incarcerated at NJ State Prison 3rd & Federal Streets Trenton, NJ 08625; with First Class Postage prepaid to be sent via USPS Mail; my notice, motion, declaration, disclosure pursuant to Rule 7.1(a)(2), complaint in intervention, and proposed order in support of my motion to intervene pursuant to Rule 24; to the Clerk of the District Court at USDC-NDTX US Courthouse 1100 Commerce Street, Room1 1452 Dallas, TX 75242for filing; and a copy each to Counsel for Plaintiff Angela Buchanan at 3710 Rawlins Street, Suite 900 Dallas, TX 75219 and Counsel for Defendant Joshua J Bennett at Campbell Center II 8150 N. Central Expressway, Suite 500 Dallas, TX 75206 for service.

I hereby invoke the prison mailbox rule.

I declare under penalty of perjury that the foregoing statements made by me are true and accurate.

Executed this 9 Day of FEBRUARY , 2024

Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ
08625-0861

Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ 08625

FEBRUARY 9 , 20 24

Clerk, US Dist. Ct. - N.D. TX
Dallas Division
US Courthouse
1100 Commerce Street, Room 1452
Dallas, TX 75242

      RE: Hazlewood v. Netflix, Inc.
      Civil Action No. 3:23-cv-01109-DCG
      Hon. David C. Godbey, U.S.D.J.

Dear Clerk;
    Please find enclosed and file onto the docket my notice,
motion, declaration, disclosure pursuant to Rule 7.1(a)(2),
complaint in intervention, and proposed order in support of
my motion to intervene pursuant to Rule 24; and proof of service
thereof; in the above-captioned matter.

                          Kind Regards,

                         Caleb L. McGillvary
                         In Propria Persona

ENCL:
CC: FILE



E. McGillvary
#702065/941#1023174
NSSP PO Box 861
TRENTON NJ
08625

CERTIFIED MAIL

7004 1350 0004 0477 8851

CLERK
US DIST CT - N.D.TX
US COURTHOUSE
1100 COMMERCE ST. RM 1452
DALLAS TX
75242

LEGAL MAIL

RECEIVED
FEB 2 0 2024
MC