Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ 08625

MARCH 26, 20 24

Honorable Judges of the District Court
US Dist. Ct. - N.D. TX
Dallas Division
US Courthouse
1100 Commerce St. Rm 1452
Dallas, TX 75242



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR - 3 2024

CLERK, U.S. DISTRICT COURT
By _____
Deputy

     RE: Hazlewood v. Netflix, Inc.
     Civil Action No. 3:23-cv-01109-DCG
     Hon. David C. Godbey, U.S.D.J.

Your Honor;

Please accept this letter in lieu of a more formal reply to Defendant Netflix's ("Defendant")'s opposition to my motion to intervene in the above-captioned matter. Intervenor Caleb L. McGillvary ("Intervenor") has established a right to intervene as of right, or in the alternative, by permission, in the interests of justice. Intervenor respectfully urges the following in support:

## Introduction

Intervenor has pleaded a strong and positive reputation, constituting a property right under the Lanham Act and California Civil Code 3344, his conviction for allegedly killing a rapist notwithstanding. As an end-run around his right to a jury trial on charges of aiding and abetting vehicular terrorism, Defendant and Plaintiff are tag-teaming Intervenor's right of publicity and reputation. But since Plaintiff has put Intervenor's endorsement value at issue, and since no one in this suit is representing Intervenor's interests, Intervenor must intervene. Defendant implies that Intervenor is libel-proof for being a "stone cold killer" regardless, but allegedly killing a rapist isn't the same as all the false laced joint terrorism and perjury Defendant has implied about Intervenor's heroic actions on February 1, 2013, by questioning whether he ever was a "guardian angel". And so what if Intervenor pled the statement in the context of the film as a whole? That's what the Supreme Court

1

said you're supposed to do.

STATEMENT OF FACTS

On February 1, 2013, Intervenor saved a crowd of people from a veicular terrorism attack by an admitted rapist. The terrorist, who admitted to raping a 14 year old girl, was tried and convicted, in a trial that gave him due process. That trial is entitled to full faith and credit.

On May 12, 2013, a serial rapist drugged Intervenor's drink and assaulted him while he lay unconscious on the floor. When he awoke, he fought his way out from underneath. The rapist died of his injuries, and Intervenor was tried in the same county where the rapist had practiced law for 40 years. Now it must be judicially noticed, practicing law in New Jersey is not the same as practicing law in Texas. In Texas, a lawyer who gets convicted of molesting kids or raping vagrants would be disbarred. God Bless Texas. But the unfortunate Yanks in New Jersey have to put up with prosecutors who distribute child porn from the prosecutors office getting nothing but a 6 month suspension; See In Re Haldusiewicz, 185 N.J 278 (2005); See also In Re Legato, 229 N.J. 173, 182 (2017)("The Court refrains from establishing a bright-line rule requiring disbarment in all cases involving sexual offenses against children"), In Re Herman, 108 N.J. 66 (1987), In Re Ruddy, 130 N.J. 85 (1992), In Re Pierce, 139 N.J. 533 (1995), In Re Gilligan, 147 N.J. 268 (1997), In Re Peck, 170 N.J. 4 (2001), In Re Ferraiolo, 170 N.J. 600 (2002), In Re Rosanelli, 176 N.J. 275 (2003)(All describing NJ lawyers who received anywhere from a reprimand to a year-long suspension for sexually molesting toddlers. There are too many more NJ cases like this to include in this brief reply.), "No Prison time for child molester from one of NJ Shore's wealthiest families", NJ 101.5 (August 10, 2022) https://nj1015.com/halsitt-deal-nj/.

The rapist was the brother of the chief of police, and friends with the Town Mayor, Head County Judge, and Head County Prosecutor. To top it all off, the rapist was part of a Democrat politcal funding network that contributes heavily to the

2

campaigns of each senator responsible for appointing judges in the State of New Jersey. See In Re Cohen, 204 N.J. 588 (2011)(NJ Assemblyman who was funded by the rapist, head prosecutor, and network was suspended from practicing law because he had been caught distributing child pornography in the NJ State Legislature. No one he distributed it to was caught, nor apparently even investigated.). Because of the official animus against Intervenor, exculpatory evidence of rape drugs was destroyed, and he was deprived of Due Process at his trial as a result.

Intervenor refers the Court to his habeas proceeding at McGillvary v Davis, Dkt. No. 1:22-cv-04185-CPO (D.N.J. June 22, 2022)(Administratively terminated without disposition on the merits by money laundering Defendant Judge in McGillvary v. Scutari, Infra, "Unless and until the related proceeding is disposed of"; 28 U.S.C. 1657(a) notwithstanding.). The Habeas Petition in that matter, Id. ECF 1, shows that the due process violations alleged therein render the conviction ineligible for full faith and credit. See Kremer v. Chemical Constr. Corp., 456 U.S. 461, 481 (1982).

On the next day from when the Netflix documentary trailer was released, Netflix's offer to purchase public land in NJ was approved. Three days after the documentary itself was released, Netflix closed the sale of the land. The politicians who are cutting all the red tape for Netflix to acquire the land are funded by the same Democrat network that the rapist was a part of. Netflix, presumably as part of the bargain to launder the rapist and his network's reputation in exchange for an $8,000,000 discount on the public land (and all the millions of incentives besides); published a raft of slander about Intervenor. See McGillvary v. Scutari et al., Dkt No. 1:23-22605-JMY (DNJ 2023)(Listing the wire fraud, money laundering, and bribery that went into the real estate deal, in a federal Civil RICO action. Do you think the FBI would jump on that asset forfeiture, which could cause a firesale of Netflix and reduce the national deficit by half a trillion? Not in New

Jersey, but maybe the Court could refer the US Attorney in Texas to this at-least-a-billion dollar 18 U.S.C. 1964(a) forfeiture.).

The slanderous statement at issue in this case in fact referred to Intervenor, and when taken in the context of the film as a whole, made the implication that Intervenor was not a "guardian angel" on February 1, 2013, but an attempted "stone cold killer" behind the terrorist attack on innocent people.

Allegedly killing a rapist don't make you libel-proof for being called a terrorist, no matter how terrifying such an alleged act is to a bunch of child rapists slapping each others' wrists with reprimands and 6-month suspensions. Plaintiff, a child care provider, should be happy such a person as Intervenor exists, and just drop his name from the complaint out of courtesy. But since he hasn't, Intervenor has a right to defend his right of publicity and Lanham Act endorsement interests through the vehicle of a defamation tort, and has pleaded these as special damages. This lawsuit ensues.

STANDARD OF REVIEW

A. PLAINTIFF IS PRO SE

All documents filed by a pro se litigant are entitled to liberal interpretation. Erickson v Pardus, 551 U.S. 89 (2007)

B. INTERVENTION AS OF RIGHT

Fed. R. Civ. P. 24(a)(2) is to be construed broadly in favor of applicants. Smith v. L.A. Unified Sch. Dist., 830 F.3d 843, 853 (CA9 2016). An applicant is entitled to intervene if; (1) the motion is timely; (2) The applicant has a significantly protectable interest relating to the subject of the action; (3) Disposition of the action may, as a practicable matter, impair or impeded the applicant's ability to protect that interest; and (4) The applicant's interest must be inadequeately represented by the parties to the action. Entergy Gulf States La., LLC v. United States EPA, 817 F.3d 198, 203 (CA5 2016).

C. INTERVENTION BY PERMISSION

A Court may grant permissive intervention when the applicants claim or defense has a question of law or fact in

common with the main action. Fed. R. Civ. P. 24(b)(1)(B).

LEGAL ARGUMENT

POINT I:    INTERVENOR   HAS SHOWN ALL THE GROUNDS FOR INTERVENTION AS OF RIGHT

A. Intervenor's motion is reasonably timely

Even though these four factors give structure to the timeliness analysis, they must be based on the context of the case and should not be used as a tool to punish tardy intervenor applicants. Ross v. Marshall, 426 F.3d 745, 754 (CA5 2005).

1. Intervenor is an incarcerated pro se litigant

Defendant relies on the false assumption that incarcerated pro se litigants have access to PACER and can search any docket under the sun. It is judicially noticeable that prison law libraries are notorious for antiquated and minimal resources. Intervenor has no access to PACER, with which to discover the existence of this suit, and filed a motion to intervene as soon as LEXIS was updated. He has declared so in support of his motion. Defendant has not rebutted this with any evidence to the contrary.

2. The existing parties won't be prejudiced

Defendant claims that discovery is well advanced, but lists naught but initial disclosures and a corporate deposition. Intervenor is imprisoned, and is not likely to take oral deposition, relying instead on interrogatories, requests to produce, and requests for admissions. The gist and sting of the defamation at issue is whether Intervenor or Plaintiff were "A guardian angel or a stone cold killer"; in intervenor's case, during the events of February 1, 2013; and in Plaintiff's case, in general and in his profession as a neonatal care provider. All Intervenor needs to show is the Court record of People v. McBride, and that the Defendant knew of this record and therefore had obvious reasons to doubt the implication, otherwise known as actual malice. No deposition needed for that one, just the facts, ma'am.

3. Intervenor would suffer damage to his endorsement value in his property interests created by Cal. Civ. Code 3344 and 15 U.S.C. 1125(a) if not granted

5

Plaintiff could've just sued Netflix on their insinuation that he might be a stone cold killer. That's slander per se in anyone's book. But he went and said that association with Intervenor was something to be ashamed of, and that cuts against the grain of Intervenor's Right of Publicity and Endorsement Value. Most people who work as care providers would praise Jesus about someone who protects women from homicidal pedophiles and allegedly kills rapists. The temple wouldn't be the temple without the pillar of Boaz. So unless Plaintiff wants to remove his allegations about Intervenor, this case is a free-for-all on Intervenor's well-established Right of Publicity, as pleaded in his complaint in intervention. It would prejudice Intervenor if the issue was collaterally estopped that association with him were something other than endorsement worth money.

4. Unusual circumstances exist

Intervenor is locked up for defending himself against a serial predator who drugged his drink and assaulted him while he was passed out. Unluckily for him, that rapist was part of a Democrat political funding network that included the Head County Prosecutor, Head County Judge, and Head of the Judiciary Appointment Committee for the whole State. See McGillvary v. Scutari et al., Dkt No. 2:23-22605-JMY (USDC-DNJ)(Describing this network with correlating evidence, including election funding law enforcement records). That's not to tar any other Democrats with the same brush, but the prosecutor destroyed evidence, the judge held trial under Damocles's sword, and the Appellate judges likewise had their tenure in the hands of the rapist's crony. So Intervenor is in NJ State Prison on petition for habeas corpus for violations of his due process rights, and couldn't find out about this lawsuit until when he did. See McGillvary v. Davis, Dkt. No. 2:22-cv-04185-CPO (USDC-DNJ)(Currently in limbo due to contravention of 28 U.S.C. 1657(a)'s mandate to expedite habeas cases); See also In Re Caleb L. McGillvary, App. No. 24-1129 (3rd Cir. 2024)(Mandamus petition to the 3rd Circuit regarding denial of due process and retaliatory contravention of 28 U.S.C. 1657(a) in McGillvary

v. Davis). The Habeas Petition in that matter, Id. ECF 1, shows that the due process violations alleged therein render the conviction ineligible for full faith and credit. See Kremer v. Chemical Constr. Corp., 456 U.S. 461, 481 (1982)

B. Intervenor has a legal interest

As stated in "A.3." above, Plaintiff has claimed in his complaint that "association with [Intervenor]" has somehow tarnished his reputation; thereby putting Intervenor's endorsement value at issue. Intervenor's property interest created by Cal. Civ. Code 3344 and 15 U.S.C. 1125 in his endorsement is pleaded as special damages in his complaint in intervention. This legal right will be affected by this action, unless Plaintiff removes his allegations about associating with Intervenor. See Donaldson v. United States, 400 U.S. 517, 530-531 (1971)(Intervenor applicant must show proprietary interest).

C. Collateral estoppel on the issue of Intervenor's endorsement value would impair his ability to protect his Right of Publicity

A depreciation in the value of Intervenor's Lanham Act or Right of Publicity endorsement will cause immediate and irreparable conrete financial loss to Intervenor's interests. This will cause injury in a practical sense, so disposition of this action will impede Intervenor's ability to protect his interest. See New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 463 (CA5 1985)(Intervenor must show that, but for intervention, he will be injured in a practical sense). Intervenor will, eventually, get out of prison; and his endorsement value has been steady all these years and otherwise would be but for if this action is decided unfavorably to it.

D. Defendant and Plaintiff are tag-teaming Intervenor's interest

Defendant is locking horns with Intervenor in another forum, and is using this action for its collateral estoppel potential against Intervenor. Plaintiff is throwing Intervenor under the bus, even though he could prove his defamation claim based solely on the sting of the false statement, without dragging Intervenor into this action. There is no identity of

7

interest in this action, and the existing parties have pleaded allegations hostile to Intervenors interests in their Complaint and Answer. See Heaton v. Monogram Credit Card Bank, 297 F.3d 416, 425 (CA5 2002)(The burden on the applicant to show inadequacy is minimal); Federal Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist., 983 F.2d 211, 216 (CA11 1993)(Any doubt regarding adequacy should be resolved in favor of the applicant).

POINT II: IN THE ALTERNATIVE, THIS COURT IS RESPECTFULLY
REQUESTED TO ALLOW PERMISSIVE INTERVENTION

The requirement that a motion to intervene be timely is not a tool of retribution meant to punish an applicant's tardiness. See Sierra Club v. Espy, 18 F.3d 1202, 1205 (CA5 1994). Although this proceeding is in discovery stage, it will not take but a couple months for Intervenor to trade interrogatories and requests to produce to establish that Defendant knew of the proceeding of People v. McBride in California Superior Court and made the implication regardless. And Defendant's arguments that "Intervenor claims the film as a whole is defamatory" is in line with the Supreme Court's mandate that implications of defamatory statements must be viewed in light of the publication as a whole. See Masson v. New Yorker Magazine, Inc. 501 U.S. 496 (1991).

In measuring any delay in seeking intervention, the inquiry looks to when the intervenor first became aware that its interests would no longer be adequately protected by the parties. See Blum v. Merill Lynch Pierce Fenner & Smith, Inc., 712 F.3d 1349, 1353 (CA9 2013). Intervenor has filed a declaration showing when he became aware, and Defendant has produced no evidence to rebut this. Measuring the delay from that point, this motion was exceedingly prompt.

POINT III: PLAINTIFF HAS PROPERLY PLEADED DEFAMATION AND/OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS THEORIES IN THE ALTERNATIVE FOR THE SAME SET OF FACTS

Contrary to Defendant's bald assertion that "this case is about Plaintiff's reputation"; this case is about a slanderous

statement that was published by Netflix, and the statement has damaged both Intervenor and Plaintiff. That statement, and this action, have brought Intevenor's endorsement value to his Right of Publicity created by California State Law, and his Lanham Act rights, into issue. That is a sufficient property interest for Intervenor to defend via defamation tort, considering the special damages pleaded with specificity in the complaint in intervention.

Defamation is (1) a publication, (2) of a false assertion of fact, (3) that is defamatory, (4) and unprivileged, and (5) that has a natural tendency to injure or that causes special damage. Taus v. Loftus, 40 Cal. 4th 683, 720 (2007). Defamation that has a natural tendency to injure is slander per se. A statement is considered slander per se if it charges any person with a crime they didn't commit, or has a natural tendency to injure them in their business or profession. Crowe v Cty. of San Diego, 608 F.3d 406, 422 (CA9 2010). Intervenor has pleaded all of these elements in his complaint in intervention.

Actual malice is a subjective test; it means that the [defendant] must have published a statement with knowledge it was false or reckless disregard of whether it was false or not. Reckless disregard, in turn, means that the [defendant] in fact entertained serious doubts as to the truth of the statement in question.

A. SLANDER CONCERNING THE FEBRUARY 1, 2023 INCIDENT

The statement "Is this a guardian angel, or a stone cold killer?" must be viewed in the context of the documentary as a whole. Taken in the context of the documentary as a whole, each statement cumulatively states about the February 1, 2013 incident that McBride "fuck[ed Intervenor] in the ass and [Intervenor had] to keep it real and take him out"; so Intervenor "handed him a laced joint]" in which there was "all these drugs"; after which Intervenor "made the assumption they were both ghosts" and said "I bet we could drive through that truck right now and nobody would even see us"; after which, Intervenor "like starting a fire so you can put it out after", "bludgeon[ed]

someone over the head with a deadly weapon" which was not justified force because "hitting someone in the head with a hatchet 3 times, blunt or not is violent"; and thereafter people who "know[] who kai was" give lay opinion that he perjured himself concerning "what actually happened in Fresno that day"; and therefore the California Court got it wrong: Intervenor was not a "guardian angel" on February 1, 2013, he was a "stone cold killer." Contrary to Defendant's assertion, that context makes for the implication that Intervenor had committed "stone cold" attempted murder on that day, and his implicitly admitted reputation as a "guardian angel" was in question for reason of the false assertion of fact. Certainly it makes the implication Defendant created by stringing them all together in the documentary false. These statements were known to be false at the time they were published, or at least the proceeding described in 2 of the Complaint in Intervention was known to Defendant and should have been an "obvious reason to doubt the accuracy of the third party's assertions". See Makaeff v. Trump Univ., LLC, 715 F.3d 254, 270-71 (CA9 2013)(Intervenor needs to show "obvious reasons" to doubt the truthfulness of the original speaker, or the accuracy of his statements, to establish recklessness for republishing a third party's allegations).

Although Defendant has not explicated the "libel-proof plaintiff" doctrine, the implication is unmistakable. The Supreme Court has rejected this doctrine as being unconstitutional in Masson v. New Yorker Magazine, Inc. 501 U.S. 496, 523 (1991). Even if Intervenor were "libel-proof" for killing rapists, any God-fearing Christian would recognize that doesn't diminish his reputation for being a "guardian angel."

CONCLUSION

For all the foregoing reasons, Intervenor respectfully asks the Court to grant intervention.

Respectfully Submitted,

Caleb L. McGillvary
In Propria Persona

ENCL:
CC: FILE

10

PROOF OF SERVICE

I, Caleb L. McGillvary, declare pursuant to 28 U.S.C. 1746 that on today's date, I placed in the institutional mailing system here where I'm incarcerated at NJ State Prison 3rd & Federal Streets Trenton, NJ 08625; with First Class Postage prepaid to be sent via USPS Mail; the original of my reply to Defendant Netflix's opposition to my motion to intervene; to the Clerk of the Court at USDC-NDTX 1100 Commerce St. Rm 1452 Dallas, TX 75242; and a copy of said document to Counsel for Plaintiff Angela Buchanan at 3710 Rawlins St., Ste 900 Dallas, TX 75219, and Counsel for Defendant Joshua J Bennett at Campbell Center II 8150 N. Central Expswy, Ste 500 Dallas, TX 75206.

I hereby invoke the prison mailbox rule.

I declare under penalty of perjury that the foregoing statements made by me are true and accurate.

Executed this 26 Day of MARCH , 20 24

Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ
08625-0861

RECEIVED

APR - 3 2024

KNB

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ 08625

MARCH 26, 20 24

Clerk, US Dist. Ct. - N.D. TX
Dallas Division
US Courthouse
1100 Commerce St. Rm 1452
Dallas, TX 75242

> RE: Hazlewood v. Netflix, Inc.
> Civil Action No. 3:23-cv-01109-DCG
> Hon. David C. Godbey, U.S.D.J.

Dear Clerk;
    Please find enclosed and file onto the docket my reply to Defendant Netflix's opposition to my motion to intervene; and proof of service thereof; in the above-captioned matter.

                                        Kind Regards,

                                        Caleb L. McGillvary
                                        In Propria Persona

ENCL:
CC: FILE

